[Sac. No. 1684.   In Bank.—March 30, 1910.]

O. A. LOWE, Respondent, v. YOLO COUNTY CONSOLIDATED WATER COMPANY (a Corporation), Appellant.

PUBLIC USE OF WATER—SALE, RENTAL, AND DISTRIBUTION FOR IRRIGATION.—Water appropriated for sale, rental, and distribution for the irrigation of lands, is appropriated for public use, and is sub-

ject to the provisions of the act of March 12, 1885, to regulate and control the sale, rental, and distribution of appropriated waters in this state.

ID.—BREACH OF DUTY—OPPRESSION, FRAUD, OR MALICE—ACTUAL AND EXEMPLARY DAMAGES.—Where the breach of duty by a water company charged with a public use is fraudulent, oppressive, or malicious, the party damaged thereby may recover, in addition to his actual damages therefor, the exemplary damages provided for in section 3294 of the Civil Code.

ID.—ESTOPPEL OF WATER COMPANY TO DENY PUBLIC USE—CONDEMNATION OF STRIP OF LAND FOR RIGHT OF DITCH.—The water company defendant is estopped as against the plaintiff to claim that it is not exercising a public use, by reason of condemnation proceedings, whereby on the theory that it was exercising a public use for the benefit of a specified district, it obtained a decree of condemnation of a strip of the land of the plaintiff for the very ditch from which the plaintiff seeks to be served with water.

ID.—LIABILITY TO ACTUAL DAMAGE UNDER ACT OF 1885.—Under section 10 of the act of 1885, an appropriation of water for sale, rental, or distribution, is required upon demand therefor, and tender in money, of the established rates, to sell, rent, or distribute said water to the extent of the actual supply thereof for such purposes, and if, having water for such use, it refuses for five days to comply with the demand "to the extent of its reasonable ability so to do" the water company is liable in damages to the extent of the actual injury sustained by the party making such demand.

ID.—HARMLESS REFUSAL OF EVIDENCE AS TO RIGHTS OF PRIOR USERS—EVIDENCE SHOWING WASTE OF SURPLUS.—The refusal of the court to admit evidence as to the rights of prior users was harmless, where the evidence shows clearly that in addition to supplying all prior users, there was a large surplus of water to the use of which the plaintiff was clearly entitled, with which the water company refused to supply the plaintiff at its established rates upon demand, and allowed the same to go to waste rather than to comply with plaintiff's demand, having the ability fully to do so.

ID.—EVIDENCE OF JUDGMENT OF CONDEMNATION — PLEADING.—Where plaintiff in his complaint pleaded the estoppel of the defendant by the judgment of condemnation it was clearly admissible in evidence in support of the estoppel pleaded.

ID.—HARMLESS REFUSAL TO ADMIT ARTICLES OF INCORPORATION.—In view of the estoppel created by the judgment of condemnation for the defendant which was proved, if the court erred in refusing to admit in evidence defendant's articles of incorporation, the error was without prejudice.

ID.—FINDING OF ACTUAL DAMAGE SUSTAINED BY EVIDENCE.—*Held*, that the evidence not only fully sustains the amount of actual damage found by the jury, but would have warranted the finding of a larger amount.

ID.—ELEMENTS OF DAMAGE—LOSS OF ALFALFA CROP AND HAY CROP.—
Land cultivated for alfalfa will produce several crops each year,
without further care except in the way of irrigation, and where it
was wholly destroyed by defendant's wrong, the measure of dam-
ages for its loss, is its rental value until restored, besides cost of
reseeding it.  For the loss of the hay crop, its value per ton if not
destroyed, should be allowed.

ID.—EVIDENCE SUSTAINING EXEMPLARY DAMAGES.—It is held that the
evidence is amply sufficient to sustain the award of exemplary dam-
ages by the jury, against the defendant corporation, by reason of
the acts and declarations of those entitled to represent it, showing
oppression and malice against the plaintiff, and wantonly and will-
fully depriving plaintiff of the water to which he was entitled.

ID.—ADMISSIBLE EVIDENCE—DECLARATIONS OF PRESIDENT AND MANAGER
—ILLEGAL EXACTION—MOTIVE OF CORPORATION.—The declarations
made by the president and general manager of the corporation, as
to their positive refusal to furnish plaintiff with any more water
except on the condition illegally exacted that he should refund to
the company all money paid by them for the right of way, were
admissible for the purpose of showing the oppressive and malicious
motive of the corporation.  These motives are imputable to the cor-
poration, and these declarations must be presumed *prima facie* to be
in accord with the desire of the board of directors.

ID.—PRESUMED KNOWLEDGE BY DIRECTORS OF REFUSAL OF APPLICATION.
—It must be assumed that the directors knew of the plaintiff's
written application for water left at the office with the person in
charge thereof, and that the directors were aware of the ground on
which the application was refused, if the illegal condition exacted
was not complied with.

ID.—SUFFICIENT DEMAND FOR WATER—COMPLIANCE WITH STATUTE.—
The leaving of the written demand for the water at the office of the
corporation defendant, during office hours, with the person in charge
of the office, was a sufficient compliance with the act of 1885 as to
demand.

ID.—WAIVER OF OBJECTION TO DEMAND AND TENDER.—Where prior to the
commencement of the action, no objection was interposed to the
sufficiency of the demand or of the tender of money made for the
water needed by plaintiff, but the demand and tender were simply
ignored, all objection to the form of either was waived, and defend-
ant cannot now be heard to object to their sufficiency.

ID.—PROPER REFUSAL OF REQUESTED INSTRUCTION — PREPARATION TO
RECEIVE WATER—INAPPLICABILITY TO EVIDENCE.—The court did not
err in refusing to give a requested instruction that, before defendant
was required to give water to a customer, he must be prepared to
receive it, where the evidence shows, without conflict, that plaintiff
was about to put in his side-gate to receive the water, when he was
notified by defendant's general manager not to put it in, for defend-
ant would not furnish him with water.

ID.—PROPER MODIFICATION OF REQUEST.—*Held,* that in view of the facts, the court properly modified a requested instruction which left the question involved fully to the jury, and that the instruction as given was as favorable to defendant as the law warranted.

APPEAL from an order of the Superior Court of Yolo County denying a new trial. H. M. Albery, Judge presiding.

The facts are stated in the opinion of the court.

A. L. Shinn, and N. A. Hawkins, for Appellant.

A. C. Huston, for Respondent.

ANGELLOTTI, J.—This is an appeal from an order denying defendant's motion for a new trial in an action for damages for failure on the part of defendant to deliver to plaintiff water for the irrigation of forty-two acres of land in Yolo County for the season of 1906. There was a trial by jury and plaintiff had verdict and judgment for $1099, consisting of $599 actual damages and $500 exemplary damages. There was an appeal by defendant from the judgment on the judgment-roll alone. On that appeal the judgment was affirmed by the district court of appeal of the third appellate district, and an application for rehearing in this court was denied. (See *Lowe* v. *Yolo County etc. Co.,* 8 Cal. App. 167, [96 Pac. 379].)

There appears to be some difference between counsel as to the effect of the decision on the appeal from the judgment. The only questions involved on that appeal related to the sufficiency of the complaint and the right of the plaintiff, in view of those allegations, to exemplary damages. It was held that the complaint sufficiently stated a cause of action for damages against one who had appropriated waters for sale, rental, and distribution to the general public, and that the allegations of the complaint were in accord with the theory that defendant was such an appropriator, and governed by the provisions of the act to regulate and control the sale, rental, and distribution of appropriated waters in this state, approved March 12, 1885. (Stats. 1885, p. 95.) It was further held that section 3294 of the Civil Code, providing for the recovery of punitive or exemplary damages in an action for the breach of an obligation not arising from contract, where the defendant has been

guilty of oppression, fraud, or malice, express or implied, is applicable in an action for damages for failure on the part of such an appropriator to furnish water when demanded in accord with the provisions of said act, and that the allegations of the complaint in this respect were sufficient to bring the case within. the provisions of such section.    These were the only questions decided on such appeal, as we read the opinion of the district court of appeal.

1. We shall accept the admission of learned counsel for defendant, contained in their closing brief, that defendant "never seriously contended that it did not exercise a public use, or that it was not amenable to the act of 1885." So far as this plaintiff is concerned, defendant would appear to be estopped to claim otherwise, in view of the condemnation proceedings on its behalf against plaintiff, whereby, upon the theory that it was exercising such a use for the benefit of a specified district including plaintiff's land, it obtained a decree of condemnation of a strip of said land of plaintiff for the very ditch from which he seeks to be served with water.

Section 10 of said act of 1885 requires every such appropriator for sale, rental, or distribution, "upon demand therefor, and tender in money, of such established rates . . . to sell, rent, or distribute such water to such inhabitants at the established rates to the extent of the actual supply of such appropriated waters . . . for such purposes," and provides that if such appropriator, "having water for such use," refuses for five days to comply with the demand "to the extent of his or its reasonable ability so to do," he or it shall be liable in damages to the extent of the actual injury sustained by the party making such demand.

Defendant's real claim now is that it was not obligated to comply with plaintiff's demand for water if all the water available was needed for the purpose of supplying prior users, in other words, that plaintiff could be entitled to water from this ditch only in the contingency that there was water enough to supply both him and all others whom defendant had previously been and was then serving with water for the irrigation of their lands.    Although by two of its instructions the trial court apparently adopted this theory of defendant, instructing the jury substantially that the law gives to the first user of water a preferred right as against those subsequently

demanding water and that the defendant was under no obligation to deliver water to plaintiff unless it had sufficient to supply all previous takers and also an excess which was available for plaintiff's use, it sustained objections to all evidence offered by defendant for the purpose of showing that there were prior users of the water for irrigation purposes, who applied for the water for the year 1906.

This contention is rendered immaterial by the uncontradicted evidence in the case. It was shown that at the time plaintiff demanded the water from the defendant, and for a sufficient time thereafter to have satisfied that demand, sufficient water to irrigate plaintiff's land was flowing in the defendant's ditch at plaintiff's intake therefrom to have fully irrigated plaintiff's lands, and that this water was not used by other customers of defendant, but was allowed by the defendant to run into Putah Creek at the lower end of its ditch and thus go to waste. There is no substantial evidence in contradiction of these facts. There was never any pretense that all those claimed to have preferential rights were not supplied with the water to which they were entitled. The offers of evidence made in this behalf included the offer to show not only that they had made application for the water, but also that they had received it. Notwithstanding such use by all such parties, the evidence shows without conflict, as we read the record, that there was still sufficient water running to waste to have satisfied the demands of plaintiff. To this surplus, after the demands of the prior users had been satisfied, plaintiff was certainly entitled. The refusal to admit the evidence offered was, therefore, harmless error, if error at all.

2. We are satisfied that the judgment in the condemnation proceeding brought by defendant against plaintiff was admissible in evidence, and that its effect was to estop defendant from denying that, so far as plaintiff was concerned, it was exercising purely a public use for the benefit of the landowners along the line of the ditch constructed in part over plaintiff's land. It was only upon the theory that it was exercising a public use that defendant could maintain the action and recover such judgment, and the particular public use for which the right of way for the ditch was sought was described in the complaint in such action as being one for the

supplying of the farming neighborhood of Winters, which includes plaintiff's land, with water for irrigation purposes. Issue was joined upon both these matters and those issues were litigated and determined in that case. In his complaint in this action plaintiff alleged this estoppel by judgment. In view of the estoppel created by this judgment, if the court erred in refusing to admit in evidence defendant's articles of incorporation, the error was without prejudice.

3. We find no error in the rulings of the court in the admission of evidence relative to the amount of actual damage suffered by plaintiff by reason of the refusal to furnish water, nor any force in the claim that the evidence was insufficient to sustain the conclusion of the jury that the amount of this actual damage was $599.

According to plaintiff's evidence the facts were as follows: He had seeded his forty-two acre tract to alfalfa, and at the time he needed and demanded water, July 6, 1906, had just cut his first crop therefrom. The first crop ran about one ton to the acre. The cost of putting the land in alfalfa was ten dollars per acre. This is what plaintiff meant by saying that the "stand of clover" with the first crop thus cut, was worth ten dollars per acre, as is shown by his cross-examination. It would have produced two more crops of hay during the season of 1906, if properly irrigated. Hay was worth a minimum of five dollars per ton, cut and in the field. It would not cost to exceed one dollar an acre for each cutting, and twenty-five dollars for each watering of the whole land. By reason of the failure to obtain water, no crop was obtained during the year 1906, except the crop that was cut prior to the demand. Three fourths of the alfalfa died for want of water, and the evidence was such as to warrant the conclusion that a reseeding of the whole piece would be necessary to put it in the condition it was in at the time water was refused. There was a conflict of evidence as to some of these matters, especially as to the probable yield of the alfalfa stand per acre, and also as to the cost of reseeding the land, but we must here look at the evidence in the light most favorable to plaintiff. Upon these facts the jury would have been warranted in concluding that the cost of reseeding the forty-two acres would be $420, and that the net profits of the alfalfa stand for the season of 1906, exclusive of the first crop, would have been $286, of

all of which plaintiff was deprived by the failure of defendant to furnish water as demanded.  This would make an aggregate of $706, actual damages, and the verdict was for $599 actual damages.  We are of the opinion that these elements constitute the proper measure of damages in a case of this character. Land prepared for alfalfa will produce several crops each year for several years, without further care except in the way of irrigation.  At the time of the refusal to furnish water this land had just been so prepared, and with the requisite water would have produced crops for several years to come. Its capacity in this regard was wholly destroyed by reason of defendant's wrongful act.  The case is practically that of the destruction of a meadow.  In *Bradley* v. *Iowa Central Ry. Co.,* 111 Iowa, 562, [82 N. W. 996], the question of the proper measure of damages in such a case was discussed, and the court held that the measure of damages is the cost of reseeding and the rental value until restored, finding a clear distinction between such case and that of the destruction of growing trees. As was substantially said, the purpose of the law where one has been injured by the tort of another is to reimburse the sufferer for his loss, and the cost of restoration together with the value of the use of the meadow during the time lost can be accurately ascertained in the case of a meadow, and shows the amount of loss occasioned by the wrongful act as clearly and correctly as any method of which we can conceive. The cost of restoration together with the value of the use of the meadow during the time lost, in this case the value of the profits plaintiff would have made from the crop during the season of 1906, in our opinion, constitute the damage he must be held to have suffered.  (See, also, 4 Sutherland on Damages, 4th ed., p. 3001.)  Clearly such a rule as to the measure of damage does not result in awarding double damages.  All of the evidence introduced by plaintiff as to the amount of damage was directed to these two elements, and was properly admitted on the issue of damages.

4. As we have said, the decision on the appeal from the judgment establishes that section 3294 of the Civil Code, relative to exemplary damages, is applicable in a case of this character.  It is urged that the evidence was insufficient to warrant the recovery of such damages in this case.  It is not disputed, of course, that a corporation may be held guilty of

malice or oppression by reason of acts of those whom it has placed in charge of its affairs and who "constitute, to all purposes of dealing with others, the corporation." (See *Maynard* v. *F. F. Ins. Co.*, 34 Cal. 54, [91 Am. Dec. 672].) The claim of defendant in this behalf is necessarily based on the further claim that certain evidence given of declarations made to plaintiff by both the general manager and the president of defendant must be disregarded, for that evidence taken in connection with the absolute refusal and failure to furnish any water amply warrants a conclusion of malice and oppression. Plaintiff had prepared his field and was making his preparations to receive the water therefor. He had spoken to defendant's general manager several times about the water, and had been given no reason to doubt that it would be ready for him when needed. He was about to put a side-gate in the ditch for the purpose of receiving the water, when defendant's general manager told him not to put it in, that the board of directors had notified him to notify plaintiff that they would not give him any water for that particular piece of land. Plaintiff asked Mr. Gregory, the manager, for the reason, and Gregory replied that plaintiff knew the reason, and when asked if he thought that was right said: "I don't know anything about it; I was notified to notify you you couldn't have any water." Plaintiff then asked the president of the corporation why water would not be furnished, and was informed by him that some of the directors were bitter towards him on account of "that lawsuit," and that the directors had decided not to give him any water until he had paid back the money paid him under the condemnation decree as damages. Within two or three days thereafter, viz., on July 6, 1906, he went with his attorney to the office of the defendant company, and presented to the person in charge thereof, one L. H. Stephens, the accountant of defendant, a written demand for water for irrigation of the land. He then made a tender of one hundred dollars for the water and offered to pay such other sums as might be necessary. No objection was made to the sufficiency of either written demand or tender. They were simply ignored and no water was ever furnished. It must be assumed that the fact of demand and tender were made known to the directors of defendant. The evidence of the general manager and the president in regard to the reasons assigned for the

refusal of water did not present a materially different situation. The testimony of the president and general manager introduced by defendant showed that it was claimed that plaintiff was occupying a portion of the defendant's right of way with his own ditch, and that they told plaintiff that they would give him no water while he had that ditch there. The president further testified that he told plaintiff that it would be right and proper for him to pay back to the company the cost he had put them to in the matter of procuring the right of way. There was not prior to this action any pretense that defendant did not have sufficient water to supply plaintiff, and the defendant failed to furnish the water when subsequently formally demanded without giving any reasons for such refusal. It is obvious that defendant had no right whatever to insist upon a compliance by plaintiff with either of the conditions stated as a condition precedent to furnishing him with water, and must have known that it had no such right. If he was trespassing upon the right of way, appropriate proceedings would lie therefor, and the money that he had been awarded in the condemnation proceedings was his own, awarded him by judicial decree. As said before, there was in all this clearly sufficient support for the conclusion that the defendant was guilty of malice and oppression.

It is urged, however, that the declarations of the general manager and president of plaintiff were not admissible. We think that there can be no question that the statements of these officers as to the reason for refusing water, made in connection with such refusal, were admissible for the purpose of showing the motive of the corporation. As has often been said and as is necessarily obvious, a corporation can speak only through the acts and conduct of those whom the persons composing it have put in charge of its business. Such officers of the corporation as the president and general manager, when dealing with members of the public in matters pertaining to the ordinary business of the corporation and acting within the apparent scope of their authority, must necessarily be presumed, *prima facie* at least, to be acting in accord with the desire of the board of directors, who, as said in *Maynard* v. *F. F. Ins. Co.*, 34 Cal. 54, [91 Am. Dec. 672], are deemed to be the mind and soul of the corporation entity, and whose motives and intentions are to be imputed to the corporation

itself. Boiled down, the statement attributed by plaintiff to the president was simply that the defendant would not furnish plaintiff with water unless he paid back to defendant an amount that he had received from it as damages for the right of way, those managing the corporation believing that it was inequitable and unfair for him to retain it. Here was simply a statement by the official head of defendant to an applicant for water as to the condition upon which it would be furnished to him by defendant. It is only fair to assume that it was authorized by the defendant. (See 4 Thompson on Corporations, sec. 4656; *Bullock* v. *Consumers etc. Co.,* (Cal.) 31 Pac. 367, 370; 1 Clark & Marshall on Private Corporations, sec. 239.) The statement attributed to the general manager was no more than an absolute refusal by the officer in charge of the business of defendant to furnish water, professedly made by authority of the directors. It may be that the portion of the statement attributed to the president, to the effect that "Uncle Larry and Uncle Joe are very bitter towards you on account of that lawsuit" was objectionable, but the motion to strike out was directed to the whole statement, which included unobjectionable matter, and the motion was therefore properly denied. There was no serious pretense on the trial that either the president or general manager was not acting in accord with the wish of the board of directors. It must be assumed that the formal written application of plaintiff for water, which had been left at the office of the company with the person in charge thereof, was brought to the attention of the board of directors, and that they were made fully aware by the president of his refusal to furnish water except upon the condition stated. (See *Balfour* v. *Fresno Canal etc. Co.,* 123 Cal. 397, [55 Pac. 1062].)

5. Numerous other points for reversal are made by counsel for defendant. Many of them are substantially disposed of by what we have already said, and it will be unnecessary to enumerate them here. Others are not so disposed of, and we will briefly refer to the most important of them.

We cannot doubt that the leaving of the written demand for water at the office of the defendant corporation, during office hours, with the person in charge thereof, was a sufficient compliance with the requirements of section 10 of the act of 1885 as to demand.

CLVII Cal.—33

There was never prior to this action any claim that the demand was in any way uncertain or insufficient, or that the tender of money for water was in any way insufficient. The avowed position of the defendant expressed through both its general manager and president was that it would not furnish plaintiff with any water, even if he paid the amount legally chargeable therefor. The written notice subsequently presented described with certainty land that had been "planted in alfalfa," and for the irrigation of which water was thereby demanded. In it, plaintiff further offered to pay, in addition to the one hundred dollars tendered, such further and other sums as might be necessary. As said before, this demand and tender were simply ignored, without further objection or reason of any nature ever being given. We are satisfied that defendant cannot now be heard to object to the sufficiency of either demand or tender.

We do not read the record as indicating that defendant offered or attempted to show that its ditch was not completed to an extent sufficient to enable it to furnish water therefrom. There is, therefore, nothing in its contention that it should have been allowed to show this.

Under the circumstances of this case, the court did not err in refusing to instruct the jury that before the defendant was required to deliver water to a customer, such customer must make all necessary provision for receiving it including a suitable method of diverting water from the main canal. Defendant's refusal to furnish was not based on any such ground. It was established without conflict that plaintiff was about to put in his side-gate for the diversion of the water when he was notified by defendant's general manager that he need not put it in, for the defendant would not furnish him with water.

We find no error in the modification by the court of defendant's requested instruction 10. The fact that plaintiff's ditch for the taking of water from defendant's ditch may have been in part on defendant's right of way certainly constituted no defense to this action if it was there with the consent of defendant, or if defendant's refusal to furnish water was not based on that ground. The instruction, as modified, left these questions with the jury, and was certainly as favorable to defendant as the law warranted.

We have been unable to find in the evidence contained in the record any foundation for defendant's requested instruction 12.

There is no other point made that, in our opinion, requires notice.

The order denying a new trial is affirmed.

Shaw, J., Sloss, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.

Rehearing denied.