[Civ. No. 13895. Fourth Dist., Div. Two. June 11, 1976.]

FRANK C. MERLO, an Incompetent Person, etc.,
Plaintiff and Respondent, v.
STANDARD LIFE AND ACCIDENT INSURANCE COMPANY OF
CALIFORNIA, Defendant and Appellant.

**COUNSEL**

Edward L. Lascher for Defendant and Appellant.

Hews & Munoz, Hews, Munoz & Robinson, Arthur N. Hews and Gerald H. B. Kane, Jr., for Plaintiff and Respondent.

**OPINION**

**KAUFMAN, J.**—Defendant Standard Life and Accident Insurance Company of California (hereinafter "Standard") appeals from a judgment based on jury verdicts in favor of plaintiff for compensatory damages of $267,294.52 and punitive damages of $500,000.

### Pertinent Facts

Plaintiff, an incompetent, is the father of nine children. In 1962 he purchased a home for $16,000. In 1967, to secure mortgage payments in the event he should become disabled, plaintiff purchased an insurance policy, issued by another company but assumed by Standard, providing for monthly payments of $130.63 should plaintiff become totally disabled. Payments were to continue so long as plaintiff was totally disabled until the mortgage on plaintiff's home was paid or until plaintiff

attained his 63d birthday or until 300 monthly payments had been made, whichever occurred first.

Plaintiff was an ironworker and welder. Apparently as a result of inhaling fumes on his job, plaintiff became ill. His ailment was subsequently diagnosed by several physicians as aluminum poisoning. Plaintiff continued working until May 24, 1967. Since that date he has not worked at any occupation. Indeed, the aluminum poisoning led to such extensive physical and nervous deterioration that he has been rendered incompetent.

Standard first learned of plaintiff's condition on August 25, 1967, when one Jerry Paine, a claims representative of defendant, received a claim form submitted by plaintiff. It would serve no useful purpose to detail the respective conduct of plaintiff and defendant and the correspondence between them. Suffice it to say that Standard, acting through Mr. Paine, was recalcitrant in making the monthly payments to which plaintiff was entitled by virtue of his total disablement, and the evidence was sufficient to support the jury's implied finding that Standard had breached its covenant of fair dealing and good faith with plaintiff. Grudgingly and intermittently Standard did eventually pay most of what was owing from May 29, 1967, through October of 1969. No further payments were made. Standard took the position that, while plaintiff might not be able to return to his normal occupation, he could engage in some useful employment.

As a result of Standard's refusal to make payments pursuant to the disability insurance policy, plaintiff's home was sold in foreclosure proceedings on December 10, 1970, for $17,030. Its market value was at that time $24,500. There was evidence that plaintiff was worried about the letters of default sent him by the mortgage company, that shortly after the notice of sale had been posted on his home, plaintiff was sobbing, miserable and depressed, and that he thought himself a failure because he could not ". . . even keep a roof over [his] kids' head [*sic*]."

At the time of the notice of sale, plaintiff's wife had to take a job for the first time in her married life. When the marshal came to evict the family from their home it was necessary to store their possessions and divide the children among the relatives. The family eventually moved into a two-bedroom home where the boys were forced to sleep in the garage, which was unheated, and the girls shared one bedroom. There was no yard and no place for the children to play.

Plaintiff's complaint consisted of two counts: the first for declaratory relief under the disability insurance policy; the second for fraudulent misrepresentation. At the time of trial plaintiff stated to the court that defendant had conceded its liability under the policy to that date and that therefore plaintiff would not pursue the first count. Counsel stated that plaintiff intended to go to the jury on two theories: breach of the implied covenant of good faith and fair dealing and intentional infliction of emotional distress. The jury instructions reflect only the former. The jury returned a verdict in favor of plaintiff against Standard in the amount of $267,294.52 compensatory damages and $500,000 punitive damages. Standard's net worth was shown to be $1,607,721.01. Standard's motion for new trial made on the ground, among others, that the damages were excessive was denied by the trial court.

## Contentions and Discussion

### Liability

Standard concedes, as it must, that there is substantial evidence to support its liability for tortious breach of the covenant of good faith and fair dealing under the principles laid down in *Fletcher* v. *Western National Life Ins. Co.*, 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286], *Gruenberg* v. *Aetna Ins. Co.*, 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032], and *Silberg* v. *California Life Ins. Co.*, 11 Cal.3d 452 [113 Cal.Rptr. 711, 521 P.2d 1103]. It contends, however, that certain jury instructions were improper and that, therefore, the entire judgment should be reversed and the case remanded for a new trial. Although we agree with Standard's contentions as to several instructions, we do not agree that outright reversal is thereby mandated.

Having been advised that a verdict against Standard could rest on a finding that "the defendant did not act in good faith" and that "when the insuror [*sic*] unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability," the jury was told: "In every insurance contract there is an implied covenant of good faith and fair dealing." Standard concedes that this was a correct statement of the law but contends that it has no bearing on any issue in this litigation. We do not agree. The sole theory upon which the case went to the jury was that Standard had tortiously breached the implied-in-law covenant of good faith and fair dealing. Obviously, if a tortious breach of a covenant of good faith and fair dealing is the gravamen of the plaintiff's claim, it is not improper for the court to instruct that such a duty exists.

■ Standard contends that the instructions insufficiently define or describe the conduct that will constitute a breach of the duty of good faith and fair dealing. As previously noted, the jury was told: "When the insuror [sic] unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability." This instruction was rendered at the request of plaintiff. At the request of Standard the court also instructed: "In determining whether the plaintiff is entitled to consequential damage as described in these instructions, you should determine whether or not the insurance company or the individuals acted in good faith, [sic] one test is to ask yourself whether an ordinary and prudent insurance company or individual desiring to treat its policyholders fairly and reasonably, would have acted as they did." In combination these instructions come pretty close to the mark. Perhaps it would have been slightly more informative also to instruct that when an insurer refuses to pay the claim of its insured without a reasonable belief that it has a legitimate defense to the payment of such claim, such conduct constitutes a breach of the covenant of good faith and fair dealing. But Standard did not request such an instruction. The only instruction requested by Standard on this point is that quoted above, and that instruction was given. If Standard was not satisfied with the instruction on this point, it was incumbent upon it to request more complete, appropriate instructions of its own. (*Downing* v. *Barrett Mobile Home Transport, Inc.,* 38 Cal.App.3d 519; 523 [113 Cal.Rptr. 277]; 4 Witkin, Cal. Procedure (2d ed.) p. 3013 and cases there cited.) ■ "In a civil case, each of the parties must propose complete and comprehensive instructions in accordance with his theory of the litigation; if the parties do not do so, the court has no duty to instruct on its own motion." (*Downing* v. *Barrett Mobile Home Transport, Inc., supra,* 38 Cal.App.3d at p. 523 and cases there cited.)

■ We do agree that inasmuch as no ambiguous provision of the insurance policy was at issue in the case, it was improper to instruct: "Doubts as to the meaning of terms used in an insurance policy must be resolved against the insuror [sic], and any exception to the performance of the basic underlying obligation must be stated clearly so as to apprise the insured of its effect." The standard instruction to the effect that all instructions are not necessarily applicable (BAJI (5th ed.) No. 15.22) was given, however, and we cannot conclude the instruction erroneously given was prejudicial.

■ Standard also complains of the instruction: "Under the terms of the policy, Standard Accident, as a matter of law, was obligated to

commence payments as of Frank Merlo's first day off work." The argument is that payments necessarily had to await the filing and processing of plaintiff's claim. The instruction did not inform the jury that payments should have commenced *on* plaintiff's first day off work but, rather, *"as of"* that day. Thus, a reasonable interpretation of the instruction is that, although the payment would actually come to plaintiff at a later date, the benefits should be computed as of his first day off work. ■ A reviewing court ". . . will adopt the construction of an instruction which will support rather than defeat the judgment if it is reasonably susceptible to such interpretation." (*Rupp* v. *Summerfield,* 161 Cal.App.2d 657, 667 [326 P.2d 912].) "We should and must assume that the jury is constituted of reasonable men and women, and that they construed the instructions as would reasonable men and women. So construed, there was no error in the instruction." (*Taylor* v. *Gordon,* 102 Cal.App.2d 233, 237 [227 P.2d 64].)

■ We conclude, therefore, that there was no error in instructing the jury sufficiently prejudicial to require reversal of the judgment insofar as it establishes liability for compensatory damages.

*Compensatory Damages*

■ Plaintiff was awarded $267,294.52 as compensatory damages. Standard contends that a compensatory award of this magnitude is not supported by the evidence, was probably the result of misinstruction by the trial court and, as a matter of law, is excessive and so grossly disproportionate to plaintiff's injury as to raise a presumption that it is the result of passion or prejudice. Although we find no reversible error in instructing the jury, we agree that the award is excessive and so disproportionate to plaintiff's injury as to indicate that it was the result of passion or prejudice.

Plaintiff requested and the court rendered the following instruction on concurring causation: "There may be more than one proximate cause of an injury. When wrongful conduct of two or more persons contributes concurrently as proximate causes of an injury, the conduct of each of said persons is a proximate cause of the injury regardless of the extent to which each contributes to the injury. A cause is concurrent if it was operative at the moment of injury or acted with another cause to produce

the injury. It is no defense that the wrongful conduct of a person not joined as a party was also a proximate cause of the injury."[1]

Standard contends that there is no evidence to support the rendition of this instruction and that it was intended to and likely to permit the jury to hold Standard liable for all plaintiff's losses and suffering, whether caused by his industrial disease (aluminum poisoning) or by Standard's conduct. While it is conceivable that the jury understood this instruction as Standard contends, we do not believe that probable. Standard engaged in a prolonged examination of plaintiff's workers' compensation attorney, Mr. Byhower. Mr. Byhower, primarily as a courtesy to plaintiff, undertook to communicate with Standard and to forward to Standard a number of medical reports that were germane also to plaintiff's workers' compensation claim. Standard attempted to show that Mr. Byhower was negligent in respect to these activities and that some of plaintiff's injury resulted from Mr. Byhower's negligence. Thus, there was a legitimate basis for plaintiff's requesting and the court's rendering a concurrent cause instruction. In his argument, plaintiff's trial counsel related the concurrent cause instruction to any possible negligence on the part of Mr. Byhower, thus minimizing any danger that the jury understood the instruction as permitting recovery from Standard of damages resulting from plaintiff's industrial injury.

In any event, if Standard was dissatisfied with the concurrent cause instruction requested by plaintiff, it was, under the circumstances, incumbent upon Standard to request appropriate instructions of its own. (*Downing* v. *Barrett Mobile Home Transport, Inc.,* supra, 38 Cal.App.3d at p. 523 and cases there cited.)

In instructing on damages, the court instructed the jury that if it should find the plaintiff entitled to a verdict, it should award plaintiff such amount as would compensate him reasonably for all detriment suffered by him and of which defendant's conduct was a proximate cause. The instruction continued: "In arriving at the amount of the award, you shall consider *any actual damage which the plaintiff has proved, and also such sum as will compensate him reasonably for any fears, anxiety and other mental and emotional distress,* if any, suffered by him

---

[1]This instruction is an adaptation of BAJI (5th ed.) No. 3.77, an instruction designed for use in negligence cases when there is evidence of concurrent causation.

Standard contends that this instruction goes to liability. Technically, that is correct. As a practical matter, however, any error in giving this instruction would serve only to enhance compensatory damages. We therefore consider this problem under that heading.

and proximately resulting from the conduct in question." (Italics added.) As we pointed out in *Fletcher* (10 Cal.App.3d at p. 406), this instruction is technically incorrect. It draws a distinction between actual damage and emotional distress and seemingly informs the jury that while actual damage must be proved, emotional distress need not be. On the contrary, emotional distress is a form of actual damage and must be proved as any other actual damage. It is true, of course, that, in an action for tortious breach of the covenant of good faith and fair dealing, the plaintiff is entitled to recover compensatory damages for all detriment proximately resulting from the tortious breach of the covenant, including economic loss as well as emotional distress. (*Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at pp. 401-402.) It is possible that the jury so understood the criticized instruction. As we have previously pointed out, a reviewing court will adopt the construction of an instruction which will support rather than defeat the judgment if it is reasonably susceptible to such interpretation. (*Rupp* v. *Summerfield, supra,* 161 Cal.App.2d at p. 667.) Thus, while the criticized instruction was technically erroneous, we cannot conclude that, standing alone, it warrants reversal of the compensatory damage award.

■ However, we agree with Standard that the compensatory damage award of $267,294.52 is so disproportionate to the injuries and losses suffered by plaintiff that it must be concluded that it was a result of passion or prejudice. It must be borne in mind that the compensatory award did not properly include any past due payments or payments to become due under the disability policy. Plaintiff's cause of action for declaratory relief based on the insurance policy was abandoned by plaintiff at the commencement of trial because defendant had conceded its liability under the policy to that date.[2] Thus, the only economic loss of any consequence proved was the loss of plaintiff's equity in his home, $7,470 according to the evidence. The bulk of the remainder of the compensatory award, in excess of $250,000,[3] must have been awarded as damages for plaintiff's emotional distress. The evidence is sufficient, of

[2]Notwithstanding that the compensatory award could not properly include any amounts due under the policy, which fact was acknowledged by plaintiff's counsel at oral argument, counsel did argue to the jury that plaintiff's damages included several minor amounts claimed due under the policy, to wit, four days of disability payments at $4.35 per day allegedly unpaid and ten months of allegedly unpaid disability compensation in the amount of $3.14 a month. It is quite apparent from the fact that the compensatory award was in an exact amount down to the pennies that the jury did erroneously include these sums in the compensatory award.

[3]In argument, plaintiff's attorney informed the jury that, in his opinion, plaintiff's emotional distress was worth $250,000.

course, to support a sizable award for plaintiff's emotional distress, but we do not find the evidence sufficient to support an award for emotional distress in an amount anything like $250,000.

We recognize, of course, that there is no fixed or absolute standard by which to compute the monetary value of emotional distress and that a reviewing court must give considerable deference in matters relating to damages to the jury in the first instance and to the trial court secondarily. (*Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at pp. 408-409; accord: *Bertero* v. *National General Corp.,* 13 Cal.3d 43, 64 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]; *Forte* v. *Nolfi,* 25 Cal.App.3d 656, 688 [102 Cal.Rptr. 455].) Nevertheless, " '[w]hen the award as a matter of law appears excessive, or where the recovery is so grossly disproportionate as to raise a presumption that it is the result of passion or prejudice, the duty is then imposed upon the reviewing court to act.' " (*Cunningham* v. *Simpson,* 1 Cal.3d 301, 308-309 [81 Cal.Rptr. 855, 461 P.2d 39]; accord: *Bertero* v. *National General Corp., supra,* 13 Cal.3d at p. 64; *Forte* v. *Nolfi, supra,* 25 Cal.App.3d at p. 688.)

*Punitive Damages*

Standard contends that the $500,000 punitive damage award was based on an erroneous instruction and, in any event, is so disproportionate to Standard's net worth that it must have been the result of passion or prejudice. Again, we are persuaded that Standard's contentions are correct.

Standard contends that it was error for the trial court to instruct: "A corporation is subject to liability for an award of exemplary damages by the acts of those whom it has placed in charge of its affairs, and who constitute for the purpose of dealing with other parties the corporation itself." The authority cited as supporting the rendition of this instruction was *Lowe* v. *Yolo County etc. Water Co.,* 157 Cal. 503 [108 P. 297]. It is true that the *Lowe* court used language almost identical to that of the instruction. However, " '[t]he admonition has been frequently stated that it is dangerous to frame an instruction upon isolated extracts from the opinions of the court.' [Citation omitted.]" " 'Judicial opinions are not written as jury instructions and are notoriously unreliable as such.' [Citation omitted.]" (*Merritt* v. *Reserve Ins. Co.,* 34 Cal.App.3d 858, 876, fn. 5 [110 Cal.Rptr. 511] and authorities there collected.) The language used in *Lowe* was appropriate to that decision, inasmuch as it was there

sought to impose exemplary damages on the basis of the conduct of the corporation's directors and its general manager and president. (157 Cal. at pp. 510-513.)

Standard complains that the jury was informed by the quoted instruction that Standard could be held liable for punitive damages for conduct of any employee under the doctrine of respondeat superior. As Standard correctly points out, this is not the law in California.

"While an employer may be liable for an employee's tort under the doctrine of *respondeat superior,* he is not responsible for punitive damages where he neither directed nor ratified the act. [Citations omitted.] [¶] California follows the rule laid down in Restatement of Torts, section 909, which provides punitive damages can properly be awarded against a principal because of an act by an agent if, but only if '(a) the principal authorized the doing and the manner of the act, or (b) the agent was unfit and the principal was reckless in employing him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the employer or a manager of the employer ratified or approved the act.'" (*Hale* v. *Farmers Ins. Exch.,* 42 Cal.App.3d 681, 690-691 [117 Cal.Rptr. 146].)

Standard is correct that the rendition of this instruction was error. The instruction did not accurately inform the jury of the California law.

Moreover, we agree that the punitive damage award was excessive as a matter of law. The primary purpose of punitive damages is to punish the defendant and make an example of him. (Civ. Code, § 3294; see *Bertero* v. *National General Corp., supra,* 13 Cal.3d at p. 65.) "It follows that the wealthier the wrongdoing defendant, the larger the award of exemplary damages need be in order to accomplish the statutory objective." (*Bertero* v. *National General Corp., supra,* 13 Cal.3d at p. 65 and cases there cited.) It also follows that the poorer the wrongdoing defendant the smaller the award of punitive damages need be in order to accomplish the statutory objective. Here, the uncontradicted evidence discloses that Standard's net worth was $1,607,721.01. Thus, the award of a half million dollars in punitive damages, disregarding the compensatory damage award, constitutes almost one-third of defendant's net worth. The punitive damage award is so greatly disproportionate to Standard's net worth that it is presumptively based upon passion or prejudice.

The foregoing is dispositive of this appeal. However, since our disposition will be to remand the case for a new trial on limited issues, it is necessary to deal with another of Standard's contentions relating to punitive damages which is likely to arise on the partial retrial.

 Standard contends that, because of the punitive matrix of the present cause of action, superadding punitive damages constitutes prohibited double punishment. In support of its contention, Standard refers us to two out-of-state cases, *Knierim* v. *Izzo,* 22 Ill.2d 73 [174 N.E.2d 157] and *Eckenrode* v. *Life of America Insurance Company* (1972) 470 F.2d 1. Both were cases involving the tort of intentional infliction of emotional distress and in which the courts disallowed punitive damages. Said the *Knierim* court: "There remains the question of whether a request for punitive damages in such an action [intentional infliction of emotional distress] is proper. . . . Generally such damages may be recovered in cases where the wrongful act complained of is characterized by wantonness, malice, oppression or circumstances of aggravation. [Citation omitted.] The alleged conduct of the defendant in intentionally causing the severe emotional disturbance is characterized by these elements. Indeed it is the outrageous nature of his conduct that forms the basis for the action. [¶] We believe, nevertheless, that punitive damages cannot be sanctioned as an additional recovery in such an action. Since the outrageous quality of the defendant's conduct forms the basis of the action, the rendition of compensatory damages will be sufficiently punitive." (174 N.E.2d at p. 165.)

We rejected this same contention in *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at p. 404. We stated: "Defendants also urge that, inasmuch as the basis of the tort of intentional infliction of emotional distress is outrageous conduct, compensatory damages assuage the outrage and punitive damages should not be allowed in addition thereto. This contention is not meritorious. (*State Rubbish etc. Assn.* v. *Siliznoff, supra,* 38 Cal.2d 330; Civ. Code, § 3294.)" We recognize that there was no discussion of this issue in *Siliznoff* and that that case is therefore questionable authority for the proposition for which we cited it. Nevertheless, the *Siliznoff* court affirmed a judgment for both compensatory and punitive damages in an action for intentional infliction of emotional distress. Moreover, our citation of Civil Code section 3294 was not inadvertent. So far as appears, the *Knierim* decision was based on court-made law, whereas in California we are bound by an act of the Legislature. Civil Code, section 3294 provides without exception: "In an action for the breach of an obligation not arising from contract, where

the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Compensatory damages and punitive damages are two different things with two different purposes. Compensatory damages are awarded to compensate an injured party for his injury; punitive damages are awarded to punish a wrongdoer and make an example of him. When both compensatory and punitive damages are awarded, there is no double punishment. There may be double recovery, but, unless and until the Legislature sees fit to alter Civil Code section 3294, it is a permissible double recovery.

The resolution of this question in the case at bench is somewhat easier than in *Fletcher*. Here, as previously noted, the case went to the jury solely on the theory of breach of the covenant of good faith and fair dealing. The basis of that tort is not necessarily outrageous conduct as is the case with the tort of intentional infliction of emotional distress. The basis of the tort of breach of the covenant of good faith and fair dealing may be either unreasonable conduct (see *Silberg* v. *California Life Ins. Co., supra,* 11 Cal.3d at pp. 460-462; *Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d at p. 575; *Beck* v. *State Farm Mut. Auto. Ins. Co.,* 54 Cal.App.3d 347, 354-355 [126 Cal.Rptr. 602]) or malicious conduct (see *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at p. 401). Indeed, our Supreme Court has most recently held that the establishment of a case of breach of the duty of good faith and fair dealing does not automatically result in liability for punitive damages. (*Silberg* v. *California Life Ins. Co., supra,* 11 Cal.3d at pp. 462-463; accord: *Beck* v. *State Farm Mut. Auto. Ins. Co., supra,* 54 Cal.App.3d at pp. 355-356.)

Accordingly, we reject the contention that both compensatory and punitive damages may not be recovered in an action for breach of the covenant of good faith and fair dealing where there is substantial evidence of oppression, fraud or malice.

We need not treat Standard's contentions that there was no substantial evidence of its authorization or ratification of Mr. Paine's conduct or that it was reckless in employing Mr. Paine or that Mr. Paine was a managerial employee. It is likely that the evidence on these points will be more fully developed on limited retrial.

*Disposition*

The judgment is reversed insofar as it awards plaintiff compensatory damages of $267,294.52 and punitive damages of $500,000. In all other respects the judgment is affirmed. The case is remanded for new trial of the following issues only: amount of compensatory damages, liability of Standard for punitive damages and, if there is liability, the amount of such punitive damages. The parties shall bear their own respective costs on appeal.

McDaniel, J., concurred.

**TAMURA, Acting, P. J.**—I concur and dissent. I would affirm the judgment below in all respects except as to the amount of the punitive award.

I dissent from the majority's holding that the compensatory award is excessive as a matter of law. While the award is substantial, the record by no means justifies invocation of the presumption that the jury must have acted from passion, prejudice or other improper motive. Nor is the majority's articulation of the reasons for its conclusion persuasive. It merely observes that aside from the loss of the $7,470 equity in his house, the bulk of the compensatory award must have been for plaintiff's emotional distress and concludes that an award of $250,000 for such harm is "so disproportionate to the injuries and losses suffered by plaintiff that it must be concluded that it was a result of passion or prejudice."

In setting aside the award, the majority improperly invades the factfinding power and discretion reposed in the jury and fails to accord the trial judge's determination on the motion for new trial the respect to which it is entitled. While nearly all of the compensatory award was for the injuries inflicted upon plaintiff's emotional well-being, the assessment of damages for tortious harm to such "intangible interests" has "long been vested in the sound discretion of the trier of fact" subject only to the passion or prejudice standard of review. (*Bertero* v. *National General Corp.,* 13 Cal.3d 43, 64 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) And where a claim of excessive damages has been rejected by the trial judge on a motion for a new trial, his determination must be accorded great weight because it is his province to judge the credibility of the witnesses and to weigh the evidence. (*Bertero* v. *National General Corp., supra,* 13 Cal.3d 43, 64.) In the case at bench the

entire thrust of defendant's motion for a new trial was grounded on the claim that the damages awarded were excessive and were the result of passion or prejudice on the part of the jury. The trial judge, after due deliberation, denied the motion unconditionally. A careful review of the record discloses no abuse of discretion by the jury or the judge.

Defendant's tortious conduct continued over a period of approximately four years. With knowledge of plaintiff's failing health, defendant played a cat and mouse game with him by making some intermittent payments, by terminating them without justification, by underpaying, and finally by refusing to make any payments. As a consequence, defendant inflicted on plaintiff protracted fears and anxieties over the possible loss of his home and caused him to suffer the traumatic confirmation of his fear. As we said in a different but related context, such emotional harm can be "as real and disabling as a physical injury." (*Baker* v. *Workmen's Comp. Appeals Bd.,* 18 Cal.App.3d 852, 863 [96 Cal.Rptr. 279].)

There is substantial evidence that defendant's tortious breach of its obligation to its insured caused severe harm to his emotional health. Plaintiff's wife testified that plaintiff was very proud of the home he had purchased for his family; plaintiff spent a great deal of his time working to improve the home; and "[h]is home was everything to him, his home and his work." Dr. Lonergan, one of the many doctors who treated plaintiff, testified that defendant's failure to make the house payments was of great concern to plaintiff, "not so much for himself but for his family"; "he was exceedingly concerned about his wife because he knew what a burden he was to her and this increased his guilt and his anxiety"; "he would come to the office with tears in his eyes and beg me to do something"; the foreclosure and eviction worsened plaintiff's "frustration and lack of ability to think clearly"; and it was not too long thereafter that plaintiff required rehospitalization.

Mr. Byhower, plaintiff's workers' compensation attorney, testified that when plaintiff came to see him after the notice of sale was posted, plaintiff was in a "terrible state"; he was "sobbing and miserable and depressed." Mr. Byhower testified that after the eviction plaintiff told him: "They drove that stake right through my heart . . . I can't even keep a roof over my kids' head . . . I'm a failure."

When plaintiff and his family were evicted from their home as a result of the foreclosure sale, plaintiff had to distribute his children among

relatives. At trial, despite his deteriorating mental condition, plaintiff attempted to describe the shame and humiliation he suffered as a result of his family's eviction with these words: "All I know is that everybody moved me out and I felt real ashamed. So there is just no way, my words are limited and I can't think of anything to say . . . it is just darn right awful."

The jury was presented with the difficult task of translating the traumatic experience of the eviction and almost four years of anxiety, fears, harassment, and humiliation suffered by plaintiff into a cash equivalent. There are no fixed or absolute standards by which we, as a reviewing court, can measure in monetary terms the extent of damages suffered by plaintiff as a result of defendant's wrongful acts. That is why the law commits the determination of the amount of damages in the first instance to the discretion of the jury and next to the discretion of the trial judge on a motion for a new trial. It is therefore the duty of an appellate court to uphold the jury and the trial judge wherever possible. (*Seffert* v. *Los Angeles Transit Lines,* 56 Cal.2d 498, 508 [15 Cal.Rptr. 161, 364 P.2d 337].) The inevitable wide differences of opinion in placing a dollar value on harm to plaintiff's emotional health do not call for the intervention of a reviewing court. (*Niles* v. *City of San Rafael,* 42 Cal.App.3d 230, 241 [116 Cal.Rptr. 733].) Viewing the evidence most favorably to plaintiff, as we must, the award is not "so grossly excessive as to shock the moral sense" so as to give rise to a presumption that the compensatory award was the result of passion, prejudice or other improper motive on the part of the jury. (See *Seffert* v. *Los Angeles Transit Lines, supra,* 58 Cal.2d 498, 507.) On the contrary, we must presume that the award was the result of a conscientious effort on the part of the jury in the first instance and the trial judge on the new trial motion to discharge their responsibilities. In light of the current limited purchasing power of the dollar, the award, though substantial, was not excessive as a matter of law.

Defendant's attempted comparison of the case at bench with *Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286], for the purpose of determining whether the instant award is excessive is inappropriate. In *Bertero* v. *National General Corp., supra,* 13 Cal.3d 43, at page 65, footnote 12, the court disapproved an attempt to show that an award was excessive by comparing it to awards in similar cases by saying: "For a reviewing court to upset a jury's factual determination on the basis of what other juries awarded to other

plaintiffs for other injuries in other cases based upon different evidence would constitute a serious invasion into the realm of fact-finding."[1]

With respect to the punitive award, I agree that the amount is excessive as a matter of law. However, I dissent from the majority's disposition requiring retrial not only as to the amount of the punitive award but on the question of liability for such award as well.

If I understand the majority correctly, it reverses the judgment on the issue of liability for punitive damages on the ground the court erred in giving the following instruction: "A corporation is subject to liability for an award of exemplary damages by the acts of those whom it has placed in charge of its affairs, and who constitute for the purpose of dealing with other parties the corporation itself."

As the majority notes, the instruction is almost a verbatim quotation of the language used by the court in *Lowe* v. *Yolo County etc. Water Co.,* 157 Cal. 503, 510-511, in reviewing and upholding the sufficiency of the evidence to support a punitive award. The statement is a correct expression of a general legal principle. (See *Davis* v. *Local Union No. 11, Internat. etc. of Elec. Workers,* 16 Cal.App.3d 686, 698 [94 Cal.Rptr. 562].) While the statement may lack the clarity and specificity preferable for use as a jury instruction, defendant did not offer an instruction spelling out with greater clarity or specificity the circumstances under which a corporation may be liable for punitive damages. Nor did defendant request amplification of the instruction given. Having failed in those respects, it may not now complain on appeal. "[I]f the court gives an instruction correct in law, but the party complains that it is too general, lacks clarity, or is incomplete, he must request *the additional or qualifying instruction* in order to have the error reviewed." (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 194, pp. 3013-3014, original italics.) Defendant is therefore foreclosed from complaining about the instruction in question.

Furthermore, the jury could not have been misled by the instruction. The uncontradicted evidence shows that defendant vested Paine with the authority to determine whether or not claims should be paid. His determinations as well as the contents of the various letters he sent to plaintiff were left to his discretion. In my view, Paine acted in a

---

[1]Despite some similarities in the facts, the evidence of the emotional distress suffered by plaintiff in the case at bench is far stronger than in *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d 376.

"managerial capacity" within the meaning of the restatement rule on liability of a corporation for punitive damages. It must be remembered that we are here concerned with an insurance company dealing in disability insurance, not just any corporation. Manifestly, to plaintiff, Paine's actions were actions of defendant. Paine personally managed the most crucial aspects of his employer's relationship with its policyholders. Defendant should not be allowed to insulate itself from liability by giving an employee a nonmanagerial title and relegating to him crucial policy decisions. Insofar as guilt of oppression is concerned, the jury's implied finding is supported by overwhelming evidence.

I would affirm the judgment below in all respects except as to the amount of *punitive* damages.

Petitions for a rehearing were denied July 7, 1976. Tamura, J. was of the opinion that the petition of the respondent should be granted. Respondent's petition for a hearing by the Supreme Court denied August 12, 1976. Mosk, J., was of the opinion that the petition should be granted.