[Civ. No. 45883. Second Dist., Div. Two. Jan. 14, 1976.]

NANCI BECK, Plaintiff and Respondent, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, Defendant and Appellant.

**COUNSEL**

Belcher, Henzie & Biegenzahn, Leo J. Biegenzahn and Uzzell S. Branson III for Defendant and Appellant.

Harvey L. Lerer, Bob Binder and Leonard Sacks for Plaintiff and Respondent.

**OPINION**

**FLEMING, Acting P. J.**—Defendant State Farm Mutual Automobile Insurance Company appeals the judgment and order denying its motion for judgment notwithstanding the verdict after the jury assessed $25,000 compensatory damages and $75,000 punitive damages in favor of plaintiff Nanci Beck on a cause of action for breach of an insurer's obligation to act in good faith and deal fairly with its insured.

Beck charged State Farm with unreasonable refusal to negotiate or settle an "uninsured motorist" claim under her automobile liability insurance policy. State Farm contends the evidence shows it acted in

good faith and without malice, that it believed it had a valid defense to Beck's uninsured motorist claim based on her alleged failure to report her hit-and-run accident to the police or Department of Motor Vehicles within 24 hours.

## THE POLICY

Pursuant to Insurance Code section 11580.2, Beck's automobile liability insurance policy provides that State Farm will "pay all sums [up to $15,000] which [Beck] shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by [Beck], caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, . . . determination as to whether [Beck] is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between [Beck] and the company or, if they fail to agree, by arbitration."

The policy defines "uninsured automobile" as (1) a land motor vehicle without sufficient and effective insurance or (2) a "hit-and-run automobile." Hit-and-run automobile "means a land motor vehicle which causes bodily injury to an insured arising out of physical contact of such vehicle with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (1) there cannot be ascertained the identity of either the operator or owner of such 'hit-and-run automobile'; (2) the insured or someone on his behalf shall have reported the accident within 24 hours to a police or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (3) at the company's request, the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident."

In separate policy provisions, State Farm agrees to pay up to $1,000 for reasonable medical expenses incurred by Beck in an automobile accident and to pay for loss to Beck's automobile caused by collision which exceeds the $100 deductible amount.

## THE ACCIDENT

Beck testified that at 2:30 p.m. on 28 April 1969 she was stopped in traffic on Santa Monica Blvd. waiting for cars ahead of her to move when another car rear-ended hers. Beck's head snapped back and she passed out momentarily. The driver of the other car came up and asked if she was all right. Beck said she was not. The driver said, "Well, its lucky I didn't break your car in two because the impact was so violent." When Beck asked the driver for his name, he said, "Bob Smith." The driver then looked at her car, and said, "There's no damage." He got in his car and drove off. Beck wrote down his license number with her eyebrow pencil.

## THE CLAIM

Beck testified she telephoned the office of her State Farm agent, Frank Ranuzzi, later that day and spoke with a secretary. Beck described the accident and reported that the other car was a 1968 dark blue or black Cadillac convertible. The driver was named Bob Smith, he had black hair and a beard or goatee. His car license number was YNF 894 or 899. Beck reported a stiff neck and damage to the continental kit on her 1956 Thunderbird. The secretary said agent Ranuzzi would telephone Beck that evening.

Beck testified Ranuzzi did not telephone that evening, so she telephoned him the next morning. She told Ranuzzi she had called the Los Angeles Police Department to report the accident and the police advised her to call the Department of Motor Vehicles, which she did, and to call the sheriff's office, in whose jurisdiction the accident occurred. Ranuzzi told Beck to come to his office when she felt up to it. He said he would make the report and "try to run the name down and the driver down."

Beck testified that the next day, 1 May 1969, she went to Ranuzzi's office and he helped her fill out a claim report. She took some of the forms home and brought them back to his office on 7 May, when she signed the claim report. About a week and a half after the accident she went to the sheriff's department and reported the accident. Either on 7 May or the following week Ranuzzi told Beck, "There seems to be some difficulty. State Farm is not going to pay your policy benefits." He said he did not know why, and advised Beck to get a lawyer.[1] Beck's 7 May

---

[1]Evidence on the date of this discussion is conflicting. Beck also testified on cross-examination that on 1 May Ranuzzi told her to get an attorney and recommended

claim report stated she reported the accident to Ranuzzi on 1 May and had filed an "SR 21" (DMV accident report).

On 15 May 1969 Beck's attorney Finn[2] sent a letter to Ranuzzi stating that Beck had an uninsured motorist claim and offered to discuss settlement. State Farm claims representative Ron Anderson attempted to identify the other driver in order to eliminate Beck's uninsured motorist claim but was unsuccessful.

On 16 June 1969 Anderson referred Beck's case to State Farm claims specialist Mal Mrdjenovich for handling as an uninsured motorist claim. Mrdjenovich reported that Beck told him she called the Hollywood police at 10 a.m. the day after the accident but the police said they could not help because she had an incorrect license number for the other car. Beck also said she telephoned the DMV. On the assumption that the 24-hour police report was a condition precedent to an uninsured motorist claim, Mrdjenovich nevertheless concluded that Beck had a valid claim because she made an effort to report the accident to the police. Mrdjenovich's supervisor Maurice Horstman, and State Farm's attorneys, Spray, Gould & Bowers, concurred in Mrdjenovich's conclusion but Horstman advised him to "use the question in negotiating a settlement."

Mrdjenovich continued to handle Beck's claim through December 1969. During that time State Farm learned that Beck sustained added injuries at the hands of one of the doctor's treating her accident injury and she had a malpractice claim pending against the doctor.[3] In treating a nerve injury the doctor punctured her lung; a surgical procedure for her lung left a scar on her chest. Attorney Lerer submitted to State Farm

Attorney Harvey Lerer. She talked to Lerer on the telephone that day and much later signed a retainer agreement with Lerer back-dated to 1 May. State Farm points out that on 1 May 1969 Ranuzzi could not have told Beck her claim would not be paid and recommended an attorney because Ranuzzi had not yet even submitted the claim for consideration. It is possible, however, that on cross-examination Beck was confused on the date by the back-dated retainer agreement which she had been shown. We are bound to view all factual matters most favorably to Beck and resolve all conflicts in the evidence in her favor. (*Nestle* v. *City of Santa Monica,* 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].)

[2]Beck apparently retained two attorneys. After she spoke with Lerer on the telephone she decided it would not be right to hire an attorney recommended by State Farm. She hired Warren Finn but did not like him and later went back to Lerer. For a time both Finn and Lerer claimed to represent Beck. Lerer emerged as her sole representative in August 1969.

[3]Beck later settled her medical malpractice claim on 19 August 1971 for $16,000.

medical bills totalling over $1,000, a claim for $5,000 in lost earnings, and estimates of $1,000 for plastic surgery and $165 for car repairs. Lerer demanded payment of policy limits, $15,000, and requested arbitration of the claim. Mrdjenovich requested authority to offer Beck $10,000 but he never received authority and State Farm never made Beck an offer to settle her claim.

In December 1969 Horstman reviewed Beck's claim and perceived several questions: whether Beck complied with the 24-hour reporting requirement; whether she could prove all the damages she claimed; and whether State Farm could subrogate to Beck's malpractice claim. In view of Lerer's demand for policy limits, Horstman referred the claim to State Farm's attorneys, Spray, Gould & Bowers, "for handling this arbitration and to protect our interests."

At trial, Mrdjenovich conceded that under Beck's policy, "until an investigation is made or somebody makes an effort to identify the owner or operator, nobody knows that it is a hit-and-run car," and that the insured has no duty to notify the police before they know the other driver is unidentifiable. Mrdjenovich testified that he knew Beck was not working and was relying on her State Farm insurance to pay her medical bills and that a two-year delay in payment of those bills would vex and oppress her and subject her to economic pressure.

At trial, Horstman conceded that in insurance negotiations a demand for policy limits is an invitation to enter negotiations and that it would be in bad faith to assert a defense known to be invalid. According to Horstman, Beck never demanded separate payment on her property and medical claims, which have no 24-hour reporting requirement, and it is custom in the industry to handle property and medical claims as a bundle with the uninsured motorist claim for settlement with the claimant's attorney.

Attorney Ryan Knapp handled the case for Spray, Gould & Bowers. On his initial review of the file in January 1970 Knapp concluded State Farm's liability was "questionable" and "For a file that started out slow, it has ended up looking like one of the all time build ups."

Arbitration was delayed as the parties attempted to find a mutually acceptable hearing date. In October 1970 State Farm set up a $15,000 reserve for Beck's claim.

Attorney Knapp believed the 24-hour reporting requirement was a condition precedent to Beck's uninsured motorist claim and that State Farm had a better than 50-50 chance of winning on that issue in arbitration. Based on statements from Beck and Ranuzzi, Knapp concluded State Farm could establish Beck did not report the accident to the police within 24 hours. At first he also felt Beck could not prove she had $15,000 in damages. After receipt of additional medical reports in December 1970, Knapp received authority from Horstman to stipulate that in the event Beck prevailed at the arbitration, she be awarded policy limits, $15,000.

Knapp testified that he represented State Farm principally on the uninsured motorist claim, so he left the medical and property damage claims to State Farm. He believed Beck had a valid malpractice claim and that State Farm could subrogate to her claim to the extent State Farm paid Beck for damages caused by the malpractice.

Beck's claim reached arbitration in January 1971. The arbitrators found for Beck, and in May 1971, when the decision became final, State Farm paid Beck $15,000.

## SUFFICIENCY OF EVIDENCE

The legal basis of Beck's cause is well-established. ■ An insurer must deal fairly and in good faith with its insured. Refusal, without proper cause, to compensate its insured for a loss covered by the policy is a breach of this implied covenant of good faith and fair dealing. (*Gruenberg* v. *Aetna Ins. Co.,* 9 Cal.3d 566, 574-575 [108 Cal.Rptr. 480, 510 P.2d 1032].)

■ On a challenge to sufficiency of the evidence, the power of an appellate court begins and ends with a determination whether there is any substantial evidence, contradicted or uncontradicted, which supports the jury's conclusion. (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183].) ■ We find sufficient evidence to support the jury's conclusion that State Farm breached its duty of good faith and fair dealing owed to Beck.

The jury could find State Farm had no reasonable grounds for refusal to pay or offer to settle Beck's uninsured motorist claim. State Farm's stated reason for refusal was that it believed it had a valid defense to Beck's claim under the 24-hour hit-and-run reporting rule. In the

circumstances of this case, however, that defense was patently untenable. At the time of the accident, no one knew this was a hit-and-run case: Beck had a name, a description of the car, a description of the driver, and a license number. Only later did it become clear the other driver could not be identified. Even if Beck should have known this was a hit-and-run case requiring a report to the police within 24 hours, there was a factual question whether she reported the accident to the police within 24 hours. Even if Beck did not report the accident within 24 hours, there was a factual question whether Agent Ranuzzi waived the reporting requirement by offering to report the accident for Beck. Even if Ranuzzi did not waive the reporting requirement, there was a legal question whether the reporting requirement was an absolute condition precedent to coverage. State Farm could not establish prejudice to it as a result of Beck's failure to promptly report the accident to the police, since she gave State Farm all the information she had within a day or two of the accident and reported the accident to the sheriff's department within a week. Finally, even if State Farm's defense had some potential validity, any payment to Beck would have been substantially protected by subrogation rights to Beck's malpractice claim.

In addition, the jury could find bad faith in State Farm's failure to act on Beck's property damage and medical payments claims, which fell under separate policy coverages with no 24-hour reporting requirements. State Farm's claims representatives testified Beck never "demanded" prompt payment of those claims, that without a demand they customarily left those claims for settlement as a bundle with the uninsured motorist claim by State Farm's attorney. State Farm's attorney, Knapp, on the other hand, testified he dealt primarily with the uninsured motorist claims and left the medical payments and property damage claims to the claims representatives. Beck's property and medical claims thus went totally unattended.

■ State Farm's challenge to the sufficiency of the evidence to support the award of punitive damages has merit. ■ The law does not favor punitive damages and they should be granted with the greatest caution. (*Ferraro* v. *Pacific Fin. Corp.,* 8 Cal.App.3d 339, 351 [87 Cal.Rptr. 226].) To justify an award of punitive damages, the defendant must be guilty of oppression, fraud, or malice. It must act with intent to vex, injure or annoy, or with a conscious disregard of plaintiff's rights. (Civ. Code, § 3294.) ■ Proof of a violation of the duty of good faith and fair dealing does not establish that the defendant acted with the requisite intent to injure the plaintiff. (*Silberg* v. *California Life Ins. Co.,*

11 Cal.3d 452, 462-463 [113 Cal.Rptr. 711, 521 P.2d 1103].) Thus it does not follow that, because State Farm took an unreasonable position on the validity of a defense to coverage under Beck's policy, State Farm acted with intent to harm Beck.

Respondent cites, and we have found, no evidence of actual malice or oppression by State Farm. Initial State Farm internal memoranda recommended that even though Beck had a valid uninsured motorist claim the issue of failure to make a police report should be used in settlement negotiations. But Beck was demanding far more damages than she had proved, and by the time she proved her damages State Farm had doubts whether she properly made a police report. A State Farm claims representative testified that he knew the withholding of benefits from Beck might vex and oppress her; but that would be true of any insured. The circumstances here do not permit an inference of actual malice or oppression. State Farm went to arbitration on the advice of counsel. (*Fox* v. *Aced,* 49 Cal.2d 381, 386 [317 P.2d 608]; see *Templeton Feed & Grain* v. *Ralston Purina Co.,* 69 Cal.2d 461, 472, fn. 7 [72 Cal.Rptr. 344, 446 P.2d 152].)

The order denying motion for judgment notwithstanding the verdict is affirmed. The judgment is modified by striking the award of punitive damages and as so modified, the judgment is affirmed. The parties are to bear their own costs on appeal.

Compton, J., and Beach, J., concurred.

A petition for a rehearing was denied February 5, 1976, and respondent's petition for a hearing by the Supreme Court was denied March 10, 1976. Tobriner, J., Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.