PACIFIC ENTERPRISES, a California corporation, Plaintiff–Appellant,

v.

FEDERAL INSURANCE COMPANY, a corporation, Defendant–Appellee.

No. 99–56309.

D.C. No. CV–94–00838–ABC.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 2001.

Decided Sept. 7, 2001.

Before D.W. NELSON,
O'SCANNLAIN, and KLEINFELD,
Circuit Judges.

### MEMORANDUM *

■ Pacific Enterprises and its subsidiaries were covered under Federal Insurance Company's crime policy during the relevant period from May 21, 1990 to May 21, 1991. The policy limit was $25 million, with a $500,000 deductible, and it provided fidelity insurance. Fidelity insurance is insurance against loss of money or securities caused by the theft or forgery by identifiable employees of the insured. The employee theft provision in the policy covered "direct losses of Money, Securities and other property caused by Theft or forgery by any identifiable Employee(s) of any Insured." The depositors forgery coverage provision provided that Federal "shall be liable for direct losses caused by forgery or alteration of, on, or in any check, draft, promissory note, bill of exchange or similar written promise, order or direction to pay a sum certain in money, made or drawn by, or drawn upon the

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

insured." The depositors forgery coverage excluded forgery committed by an employee, which is defined as a person in regular the service of the insured, or someone in collusion with an employee. The policy also stated that Federal was not liable for a loss sustained by one insured to the advantage of any other insured.

In 1985, Thrifty Corporation, a subsidiary of Pacific, permitted FTM Sports Corporation, a majority-owned subsidiary of Thrifty, to use, first, Thrifty's letter of credit facility, and then, a facility that Thrifty arranged in FTM's name at Bank of America. Under these arrangements, FTM would submit letter of credit applications through Thrifty and would have four to six months to cover its obligations. When Thrifty created FTM's own facility, it also established an FTM "sweep" account at Bank of America to handle a variety of FTM's financing needs, including advances to pay FTM's letter of credit obligations to Bank of America. Under this system, at the end of each business day, Thrifty's "concentration account" automatically deposited funds into FTM's sweep account to cover drafts or withdrew excess funds deposited in the account.

In April of 1991, Pacific discovered accounting irregularities at FTM. After investigating, it discovered that Robert J. Miller, FTM's president, engaged in fraud. Specifically, Miller would apply to Bank of America for letters of credit ostensibly for the purchase of inventory from two other corporations to which he had ties, Cactus Golf and Sports Marketing, Inc. Miller then prepared false invoices and other documents using the signatures of Cactus's and Sports Marketing's principals so that it would appear that goods had shipped even though no inventory really changed hands. He then presented the false invoices to Bank of America, who issued a

corresponding draft in favor of Cactus or Sports Marketing. The drafts were deposited in Cactus or Sports Marketing's accounts, to which Miller had access, several months before FTM was obligated to repay Bank of America. The parties dispute the ultimate destination of the funds, but agree that some of the funds were funneled back to the FTM sweep account and then to Thrifty.

Miller was convicted in Florida of forging and negotiating bills of lading in interstate commerce, and the district court in the criminal case made a finding that Miller caused a loss to Thrifty of $39 million. FTM and Thrifty also successfully sued Miller civilly for RICO violations, fraud, conspiracy to commit fraud, breach of fiduciary duty, professional negligence, negligent misrepresentation, and violating the criminal practices act. The district court in that case found they had losses of $39 million.

Pacific reported its loss to Federal in April of 1991 and submitted its formal proof of loss in January of 1992. Federal declined coverage for the depositors forgery claim on the ground that altered financial statements are not orders to pay money and that there was no direct loss of money or securities, which are both required by the Federal policy. Federal declined coverage for the employee theft claim on the grounds that there was no theft loss, and since FTM was not an insured and the thief was its employee, there was no theft by an employee of the insured. After the denial of coverage, Pacific sued for breach of contract, for breach of implied covenant of good faith and for declaratory relief.

The district court (1) granted partial summary judgment to Federal on Pacific's employee theft claim because Pacific failed to meet its burden of establishing specific facts from which a jury could infer their

loss was caused by the theft of the letter of credit proceeds; (2) held that there were no issues of material fact as to the bad faith and punitive damages issues; (3) denied Pacific's motion for partial summary judgment holding that Federal raised a genuine issue of fact as to whether Pacific made reasonable efforts to mitigate its damages; (4) issued an order granting summary judgment as to the depositors forgery coverage in favor of Federal; and (5) held that Pacific failed to raise a genuine issue of material fact as to whether the funds Bank of America advanced in response to the forged letters of credit directly caused the $42.5 million net increase in the FTM/Thrifty concentrated account.

## A. Pacific's Loss

 We review a grant of summary judgment or partial summary judgment de novo.[2] Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.[3] If the nonmoving party has the burden of proof at trial, the moving party may show that no reasonable trier of fact could fail to find for it by demonstrating that there is an absence of evidence to support the nonmoving party's case.[4]

Pacific argues that there is a genuine issue of material fact as to whether it suffered a loss. The district court held that Pacific had the burden of proving the amount of its loss because that is the law in general liability insurance cases. However, it is often difficult to know the amount of an employee's misappropriations, and as California has noted, "[t]he fact alone that it is difficult, and perhaps impossible, to reach an accurate accounting, should not deprive the insured of all relief."[5] That the insured kept faulty books just goes to the weight of the evidence, but does not necessarily prevent it from proving its loss.[6] Consequently, even though the legitimate sweep/concentration account system Thrifty employed made it impossible to trace the proceeds from the fraudulent letters of credit, this should at most go to the weight of Pacific's evidence, not function as a bar to its claims.

Pacific showed that $92 million were funded under the forged letter of credits, that FTM had a $42 million intercompany debt, and that Miller was convicted of fraud totaling $39 million. And it showed that a criminal court finding established that Miller caused a $39 million loss to Thrifty, as did a civil judgment. Though not res judicata, these judgments are evidence of which judicial notice may be taken. Pacific does not have to prove the exact amount of its loss to preclude summary judgment. Its evidence established a genuine issue of fact that the fraud caused Pacific an actual loss in excess of its deductible, $500,000.

Pacific met its burden to survive summary judgment by showing that there was a theft in excess of $500,000. Pacific's actual loss was less than the amount sto-

**2.** See *Rosenbaum v. Hartford Fire Ins. Co.*, 104 F.3d 258, 261 (9th Cir.1996).

**3.** *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir.2001) (citing *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 954 (9th Cir.1999)).

**4.** See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**5.** *Los Angeles Athletic Club v. U.S. Fidelity & Guaranty Co.*, 41 Cal.App. 439, 183 P. 174, 177 (1919).

**6.** *Piggly Wiggly Yuma Co. v. New York Indemnity Co.*, 116 Cal.App. 541, 3 P.2d 15, 16 (1931).

len.[7] We therefore reverse the district court's grant of summary judgment against Pacific as to its loss.

## B. Pacific's bad faith and punitive damages claims

■ Pacific also argues that there is a genuine issue of material fact as to whether Federal acted in bad faith and should pay punitive damages. "In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause."[8] Negligence does not constitute unreasonable behavior, and consequently, does not establish a breach of the implied covenant of good faith and fair dealing.[9] If the defendant can show that there was a genuine dispute as to coverage, a district court may dismiss a bad faith claim on summary judgment.[10]

This case does not involve a factual or legal situation where any insurer acting in good faith would pay the claim. Instead, it presented complicated issues that Federal genuinely disputed after a complete investigation by its adjustor and a team of accountants and lawyers. Pacific's evidence does not establish a genuine issue of fact as to whether Federal's denial of the claim was made in good faith.

"To justify an award of punitive damages, the defendant must be guilty of oppression, fraud, or malice. It must act with intent to vex, injure, or annoy, or with a conscious disregard of plaintiff's rights."[11] There is no evidence of such behavior here.

## C. Duty to Mitigate

■ Pacific argues further that the district court erred in finding that there was a genuine issue of material fact as to whether it had to mitigate its losses. In cases involving notice provisions of fidelity insurance policies, California courts have held that the insured only has to give notice if it knows of the loss, not if it did not know but could or should have known.[12] Mere suspicion is not sufficient

7. *See James B. Lansing Sound, Inc. v. National Union Fire Ins. Co.*, 801 F.2d 1560, 1568 (9th Cir.1986) (citing *Graydon–Murphy Oldsmoblie v. Ohio Casualty Ins. Co.*, 16 Cal. App.3d 53, 58, 93 Cal.Rptr. 684 (Cal.App. 1971)) (explaining that the insurer could apply the insured's recovery from its employee against the insured's losses, notwithstanding that the insurer denied liability).

8. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir.2001) (citing *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1151, 271 Cal. Rptr. 246 (1990)); *see also Congleton v. National Union Fire Ins. Co.*, 189 Cal.App.3d 51, 59, 234 Cal.Rptr. 218 (Cal.App.1987) (explaining that an insurer's interpretation of an ambiguous policy to exclude coverage is not conclusive evidence of bad faith unless it is unreasonable).

9. *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1166 (9th Cir.1995) (citing *National Life &*

*Accident Ins. Co. v. Edwards*, 119 Cal.App.3d 326, 339, 174 Cal.Rptr. 31 (Cal.App.1981)).

10. *See Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 1280–81, 31 Cal.Rptr.2d 433 (Cal.App.1994) ("The mistaken withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability under California law, does not expose the insurer to bad faith liability").

11. *Beck v. State Farm Mutual Automobile Ins. Co.*, 54 Cal.App.3d 347, 355, 126 Cal.Rptr. 602 (Cal.App.1976) (citing Cal. Civ.Code. § 3294).

12. *See Pacific Coast Adjustment Bureau v. Indemnity Ins. Co.*, 115 Cal.App. 583, 2 P.2d 218, 220 (Cal.App.1931) (explaining that the notice requirement of the employer's fidelity insurance policy only applies to acts actually known to the employer and not to those he might of known by the exercise of diligence).

to qualify as a discovery of dishonest acts.[13] Similarly, an insured is not required to mitigate its losses before it is aware of them, and a failure to investigate suspicious facts should not raise a duty to mitigate that, if not met, effectively terminates policy coverage. Casualty insurance insures against the insured's own negligence, and neither the duty to give notice nor the duty to mitigate can turn a coverage case into a negligence case directed at the insured's conduct before it knew of the theft. We therefore reverse the district court's denial of Pacific's summary judgment as to Pacific's duty to mitigate.

### D. Burden of proof for the employee exclusion

■ The policy's depositors forgery clause has an exclusion for employees, and Pacific argues that the burden of proof is on Federal to establish the applicability of the exclusion. California law is clear that the insurer bears the burden of bringing itself within any exculpatory clause contained in the policy.[14] Thus, Federal bears the burden to prove a factual basis for the employee exclusion.

### AFFIRMED IN PART, REVERSED IN PART.

O'SCANNLAIN, Circuit Judge,
concurring in part and dissenting in part.

I agree with the majority that the district court improperly granted summary judgment against Pacific as to the proof of its loss, and that the district court properly granted summary judgment against Pacific on its bad faith and punitive damages claims. I also agree with the majority that

Federal bears the burden to prove a factual basis for the policy's employee exclusion. Therefore, I concur in Parts A, B, and D of the majority disposition. However, I must respectfully dissent from Part C, because I disagree with the decision to reverse the district court's denial of Pacific's motion for partial summary judgment on its duty to mitigate.

I would affirm the district court's denial of the summary judgment motion because the issue of whether Pacific was obligated to mitigate its damages is a distinct question from whether Pacific gave timely notice of its loss. Pacific's duty to mitigate is a common law obligation which applies to every contract and exists independently from an insured's obligation to notify the insurer of his loss. Under California law, "A plaintiff has a duty to mitigate damages and cannot recover losses it could have avoided through reasonable efforts." *Thrifty–Tel, Inc v. Bezenek,* 46 Cal. App.4th 1559, 54 Cal. Rptr.2d 468, 474 (1996). This rule is consistent with the traditional practice of judging a party against an objective standard—i.e. would a reasonable party have been able to avoid these losses? *See* E. Allan Farnsworth, *Contracts* § 12.12 (3d ed. 1999) ("A court ordinarily will not compensate an injured party for loss that that party could have avoided making efforts appropriate, in the eyes of the court, to the circumstances."). Part of the reasonableness inquiry must be a determination whether the party should have been aware of its loss, and therefore, its duty to mitigate, because a party "cannot recover for harm he *could have fore-*

---

**13.** *See, e.g., Pellas v. Ocean Accident and Guarantee Corp.,* 24 Cal.App.2d 528, 75 P.2d 635, (1938) (explaining that grounds for suspicion did not constitute discovery of a dishonest act which would terminate the bond).

**14.** *See Aydin Corp. v. First State Ins. Co.,* 959 P.2d 1213, 77 Cal.Rptr.2d 537, 18 Cal.4th 1183, 1188 (1998) (explaining that once the insured establishes that the occurrence forming the basis of its claim is within the scope of its coverage, the burden is on the insurer to prove the claim is specifically excluded).

*seen* and avoided by ... reasonable efforts and without undue expense." *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal.App.3d 442, 277 Cal.Rptr. 40 (1990) (emphasis added).

There were genuine issues of fact as to whether Pacific should have investigated its subsidiaries' financial irregularities. The district court correctly applied an objective standard for mitigation, and properly denied Pacific's motion for partial summary judgment. I would affirm the district court on that issue.