Filed 1/16/14  Gehlhar v. Baldwin CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PHILIP GEHLHAR et al., | |
| Plaintiffs and Appellants, | G048026 |
| v. | (Super. Ct. No. 30-2011-00472481) |
| BRIANA BALDWIN et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from postjudgment orders of the Superior Court of Orange County, Gail Andrea. Andler, Judge.  Affirmed as modified.

Mohammed K. Ghods, William A. Stahr, and Ruben Escobedo III, for Plaintiffs and Appellants.

No appearance by Defendants and Respondents.

A landlord, Romans 12, LLC (Romans), and its sole owner, Philip Gehlhar, prevailed in their fraud and elder abuse causes of action against former tenants, Ron Fenney and Briana Baldwin (hereafter collectively referred to as the Tenants, unless the context requires otherwise). A jury concluded the Tenants must pay Gehlhar a total of $20,000 in compensatory damages and $200,000 in punitive damages. The jury awarded Romans a total of $1,827.50 in compensatory damages but no punitive damages. Thereafter, the trial court granted the Tenants' motion for a new trial on the grounds the punitive damages award was excessive. It also denied Gehlhar and Romans' motion for attorney fees as moot.

On appeal, Gehlhar and Romans maintain the trial court abused its discretion by: (1) granting the motion for a new trial without the benefit of an adequate record; (2) sending Romans back for a new trial despite the fact it was not awarded punitive damages; (3) exceeding its authority; (4) concluding the punitive damages award was excessive; and (5) denying the motion for attorney fees. We find none of these contentions have merit. However, for reasons explained anon, we modify the new trial order to limit retrial to the issue of punitive damages. We affirm the order regarding attorney fees.

I

Preliminarily we note, where no respondent's brief is filed, California Rules of Court, rule 8.220(a)(2), provides that "the court [will] decide the appeal on the record, the opening brief, and any oral argument by the appellant." We must "'examine the record on the basis of appellant's brief and to reverse only if prejudicial error is found. [Citations.]' [Citations.]" (*Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1192.) Appellant did not provide us with any record of the jury trial. Accordingly, the following

summary of the facts is based primarily on information we found in the complaint, postjudgment documents in the sparse appellant's appendix, and the opening brief.

In December 2008, the Tenants spoke with Gehlhar about leasing residential property owned by Gehlhar's company, Romans. Only Baldwin signed the initial lease for the property located in Huntington Beach.

The following month, the Tenants learned 81-year-old Gehlhar was hospitalized after suffering from a stroke, and he was rendered partially disabled. They soon stopped making timely rental payments. Approximately one year later, Gehlhar entered into a new lease agreement with Fenney because he promised to pay the rent on time. Fenney signed a new lease on January 1, 2010.

However, soon after signing the new lease, Fenney fell behind on the rent. Fenney promised Gehlhar that he "had money coming to him soon." On April 8, 2010, Fenney signed a promissory note agreeing to pay Romans $8,800 owed in current and back-due rent within 15 days. Fenney failed to pay the note and fell further behind on his monthly rent payments. When Gehlhar's wife attempted to intervene on his behalf, the Tenants said they would not deal with her. Gehlhar alleged in his complaint he believed happened because the Tenants wanted to continue to take advantage of him, an elderly disabled person.

Over the next few months, Gehlhar and his wife asked the Tenants for the rent money, and they falsely promised they would pay. Eventually, Gehlhar filed an unlawful detainer action, and on November 23, 2010, he received a favorable judgment. The judgment canceled the rental agreement and ordered Fenney to pay $19,901.14, and Baldwin to pay $18,301.14, in damages. Gehlhar also obtained a writ of possession, and

3

with the assistance of law enforcement, forcibly removed the Tenants and regained possession of the residence.

In May 2011, Gehlhar and Romans filed the underlying lawsuit seeking additional damages arising from breach of the lease (first cause of action), breach of the promissory note (second cause of action), fraud and conspiracy to defraud (third cause of action), and elder abuse (fourth cause of action). The factual basis of the latter two causes of action was the Tenants took unfair advantage of their frail, disabled, and elderly property owner. The gravamen of the entire complaint centered on allegations the Tenants deliberately misrepresented their ability to pay rent and thereby misappropriated the residence (and rental income) by repeatedly making false promises to pay.

In their answer, the Tenants denied all the allegations and raised various affirmative defenses, including the defense that all the causes of action had been already adjudicated in the unlawful detainer action and, therefore, were barred by res judicata and collateral estoppel. The Tenants also filed a cross-complaint, but we do not know what claims were raised because it was not included in appellant's appendix.

Counsel agreed to hold a bifurcated trial on the Tenants' res judicata affirmative defense. The court advised counsel that during the bifurcated trial it would also consider the cross-complaint, noting it also raised a res judicata issue. The court ruled for the Tenants on the first and second causes of action (breach of lease and note), stating Gehlhar and Roman "had adjudicated their obligation to pay past due rent through [the] prior [unlawful detainer] action, up to the date of judgment [November 23, 2010]." The court found Gehlhar and Roman were not barred from proceeding with the third (fraud/conspiracy to defraud) and fourth (elder abuse) causes of action given "the prior action did not resolve any liabilities[,] duties and rights under exhibit A or B which arose

4

after [November 23, 2010,] or did not relate to [the] claim [for] past due and owing rent under exhibit B through [November 23, 2010]."[1]

A jury considered evidence relating to the remaining causes of action. After Gehlhar and Roman completed their case-in-chief, the Tenants moved for a directed verdict, and the court took the matter under submission. At the end of trial, the Tenants renewed their motion for a directed verdict, but once again, the trial court delayed ruling on the motion and submitted the matter to the jury.

The jury completed a special verdict form. It concluded the Tenants engaged in conduct with malice, oppression, or fraud. It awarded Gehlhar $15,000 compensatory and $100,000 punitive damages against Fenney, and $5,000 compensatory and $100,000 punitive damages against Baldwin. Romans was awarded $1,827.50 compensatory damages against the Tenants but no punitive damages. After the trial court dismissed the jury, it denied the motion for a directed verdict. The trial court entered a final judgment on November 9, 2012.

The Tenants filed three postjudgment motions. First, they filed a motion for a judgment notwithstanding the verdict (JNOV), arguing the unlawful detainer judgment barred any further action or damages. Second, they filed a motion to set aside/vacate the judgment (this motion was not included in appellant's appendix). Third, and relevant to this appeal, the Tenants filed a motion for a new trial pursuant to Code of Civil Procedure sections 657 and 659[2] on grounds the punitive damages award was excessive. The motion, unsupported by any declarations or documents, asserted the award was excessive because (1) the failure to pay rent was not reprehensible conduct, (2) the award did not bear a reasonable relationship to the relatively small amount of

---

[1] These exhibits were not included in appellant's appendix.

[2] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

5

compensatory damages, and (3) the Tenants have a negative net worth and insufficient income to pay the award.

Gehlhar and Roman filed oppositions to each of the three motions. Relevant to this appeal, Gehlhar and Roman opposed the motion for a new trial on the grounds the Tenants did not challenge the jury's determination they defrauded an elderly person, for which a statute permits a punitive damages award. (See Welf. & Inst. Code, § 15657.5, subd. (a) [damages when defendant liable for financial elder abuse].) They argued the award was reasonable and could reasonably be paid over time based on the Tenants' employment history. They asserted the Tenants failed to "establish a basis for the [c]ourt to touch the jury's verdict at all."

In their reply, the Tenants reiterated their original arguments, maintaining there was no evidence to support punitive damages, the award was excessive, and they engaged in no "reprehensible conduct." The Tenants pointed out there was no documentary evidence introduced at trial refuting they had a negative net worth or challenging their stated income. They concluded, "Someone with a negative net worth can pay nothing."

At the hearing, the court began by giving counsel "an opportunity to talk to one another to see if [they could] come up with a compromise that reflects the fact that the court was considering perhaps a remittitur[.]" The parties were unable to reach a settlement.

The court listened to oral argument on the three motions and took them under submission. Prior to the court's ruling, Gehlhar and Romans filed a motion for attorney fees as the prevailing party on the elder abuse claim. (See Welf. & Inst. Code, § 15657.5, subd. (a).)

On January 10, 2013, the trial court issued a minute order denying the motion for a JNOV stating the Tenants failed to meet their burden of persuasion based on

6

the moving papers. It deemed the motion to set aside/vacate the judgment moot in light of its decision to grant the Tenants' motion for a new trial.

The court granted the new trial motion on the ground punitive damages were excessive. It offered three reasons supporting this conclusion. First, the court stated it was unclear if the jury based its award upon the Tenants' intentional misrepresentations to Gehlhar. The court reasoned that, nevertheless, the damages were grossly excessive "based on the evidence submitted as to both" of the Tenants and "taking into account the guidelines under the applicable case law for determining on the one hand, the degree of reprehensibility of the misconduct of Baldwin and the misconduct of Fenney; and on the other hand, the disparity between the harm suffered by [] Gehlhar and the size of the punitive damages award."

Second, the court considered "the evidence of [the Tenants'] financial condition in light of the purpose of an award of punitive damages, which is to deter misconduct and punish the defendant without being excessive[,]" and ruled the punitive damages award was excessive. The court restated the following relevant facts in the minute order: "Fenney testified at trial that over the 'last year' the combined income of [the Tenants] was between $120,000 and $130,000 with the majority of the amount from [Fenney's] income. [Fenney] testified that Baldwin's income was approximately $2,000, although Baldwin testified that at the time of trial she was unemployed. Fenney testified he prepared a profit and loss statement and that as a couple they owed between $350,000 and $400,000, and that their combined net worth was a negative $350,000 to $400,000. No further evidence was admitted in this regard, except for the stipulation of the parties that Baldwin's testimony regarding net worth would be consistent with the testimony of Fenney." The court explained, "There was no evidence to suggest that the net worth of [the Tenants] was manipulated or failed to reflect the actual wealth of these defendants, who [were] heavily in debt and one of whom was unemployed at the time of trial."

7

Third, the court determined the "punitive damages are excessive as a multiplier of the compensatory damages." The court noted the jury awarded Gehlhar $15,000 compensatory and $100,000 punitive damages against Fenney and $5,000 compensatory and $100,000 punitive damages against Baldwin. This totaled $20,000 in compensatory damages and $200,000 in punitive damages. Clearly, the jury applied a multiplier of 10.

In addition to finding damages excessive, the court expressed dismay with the briefing, stating, "[t]he motion [for a new trial] contains a [m]emorandum of [p]oints and [a]uthorities spanning less than a page and a half. There are no declarations or excerpts of trial testimony, and the summary of [the Tenants'] testimony does not entirely comport with [the] [c]ourt's recollection or notes of the trial testimony (no transcript was apparently obtained). Perhaps this brevity was intended or perhaps it was occasioned by an effort to avoid costly legal fees; nevertheless, even with the limitations of the filing, this [c]ourt finds there is merit to the argument that the award of punitive damages was excessive."

Moreover, the court clarified the limited basis for its decision to order a new trial. It explained the issue of excessiveness "was the sole basis for this motion and . . . for that reason it is the only ground being considered by the [c]ourt. In other words, the [c]ourt has not evaluated whether there was an insufficiency of the evidence to justify the verdict, whether the compensatory damages were excessive, or any other ground [that] may be asserted under the law in support of a [m]otion for a [n]ew [t]rial. Although neither party requested that the [c]ourt do so, the [c]ourt has considered whether a partial new trial should be granted as an alternative. The [c]ourt has determined that as requested, a new trial as to the entire jury verdict should be granted. The [c]ourt is not conditioning this grant based on a remittitur, although it considered doing so. The parties are certainly encouraged to meet and confer regarding settlement in light of this order."

8

After the court issued its ruling, the Tenants filed an opposition to Gehlhar and Roman's motion for attorney fees, arguing the motion was moot in light of the grant of a new trial. On February 7, 2013, the trial court agreed and denied the motion. Gehlhar and Roman appeal, the court's orders mandating a new trial and denying their motion for attorney fees.

## II

### A. *General Law Regarding Motions for New Trial*

It is well settled that on "'"appeal from an order granting a new trial upon the ground of . . . excessive or inadequate damages, . . . *such order shall be reversed as to such ground only if there is no substantial basis in the record for any such reasons*.' (Italics added.)" (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 412 (*Lane*), citing § 657.) "[A]n order granting a new trial under section 657 'must be sustained on appeal unless the opposing party demonstrates that no reasonable finder of fact could have found for the movant on [the trial court's] theory.' [Citation.] Moreover, '[a]n abuse of discretion cannot be found in cases in which the evidence is in conflict and a verdict for the moving party could have been reached . . . .' [Citation.] In other words, 'the presumption of correctness normally accorded on appeal to the jury's verdict is replaced by a presumption in favor of the [new trial] order.' [Citation.]" (*Lane, supra,* 22 Cal.4th at p. 412.)

"The reason for this deference 'is that the trial court, in ruling on [a new trial] motion, sits . . . as an independent trier of fact.' [Citation.] Therefore, the trial court's factual determinations, reflected in its decision to grant the new trial, are entitled to the same deference that an appellate court would ordinarily accord a jury's factual determinations. [¶] The trial court sits much closer to the evidence than an appellate court. Even the most comprehensive study of a trial court record cannot replace the

9

immediacy of being present at the trial, watching and hearing as the evidence unfolds. The trial court, therefore, is in the best position to assess the reliability of a jury's verdict and, to this end, the Legislature has granted trial courts broad discretion to order new trials. The only relevant limitation on this discretion is that the trial court must state its reasons for granting the new trial, and there must be substantial evidence in the record to support those reasons. [Citation.]" (*Lane, supra,* 22 Cal.4th at p. 412; *Jones v. Citrus Motors Ontario, Inc.* (1973) 8 Cal.3d 706, 710 (*Jones*).)

B. *Analysis*

Here, the court granted a new trial after concluding the punitive damages award was excessive and it supported this decision with evidence introduced at trial of the Tenants' meager financial status along with the guidelines for, and purpose of, punitive damages. Specifically, the court based its decision to grant the motion on the uncontested testimony that during the year prior to trial the Tenants' combined income was between $120,000 and $130,000, they were indebted between $350,000 and $400,000, their combined net worth was a negative $350,000 to $400,000, and Baldwin was unemployed at the time of trial.

Evidence of a negative net worth was a valid reason for the court to hold the punitive damages award was excessive. We find *Merlo v. Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 18 (*Merlo*), instructive. There the court upheld the trial court's determination a punitive damages award was excessive as a matter of law. The court explained, "The primary purpose of punitive damages is to punish the defendant and make an example of him. [Citations.] 'It follows that the wealthier the wrongdoing defendant, the larger the award of exemplary damages need be in order to accomplish the statutory objective.' [Citation.] It also follows that the poorer the wrongdoing defendant

10

the smaller the award of punitive damages need be in order to accomplish the statutory objective. Here, the uncontradicted evidence disclose[d] that [the defendant's] net worth was $1,607,721.01. Thus, the award of a half million dollars in punitive damages, disregarding the compensatory damages award, constitute[d] almost one-third of defendant's net worth. The punitive damage award is so greatly disproportionate to [defendant's] net worth that it is presumptively based upon passion or prejudice." (*Ibid*.)

The award in this case was even more disproportionate than in the *Merlo* case because the Tenants had a *negative* net worth. The trial court reasonably concluded the $200,000 award was so greatly disproportionate to the Tenants' net worth of *negative* $400,000 that the award was presumptively based upon passion or prejudice. (*Merlo, supra,* 59 Cal.App.3d at p. 18.)

We find no grounds to disturb the court's conclusion regarding punitive damages. "Net worth generally is considered the best measure of a defendant's 'wealth' for purposes of assessing punitive damages. [Citation.]" (*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 391 (*Devlin*).) The record shows the court properly carried out its statutory obligation by identifying a valid reason for a new trial and by pointing to substantial evidence in the record to support that reason. (§ 657.) The evidence regarding the Tenants' financial status was undisputed at trial and amply supports the court's analysis. (*Jones*, *supra*, 8 Cal.3d at p. 710 [order for new trial shall be reversed only if there is no substantial basis in the record to support any of the reasons offered by the trial court in issuing the order])

However, our evaluation of the new trial order does not end here. We conclude that as a matter of law, the trial court should have limited its new trial order to the issue of punitive damages. The court's order is not ambiguous. It unequivocally

11

stated the *sole ground* for granting a new trial was the same one raised in the moving papers, i.e., excessive punitive damages. The court expressly clarified it did not consider any other of the possible grounds for a new trial listed in section 657, such as insufficiency of the evidence or excessive compensatory damages. Rather, it devoted several paragraphs to all the "reasons" supporting the new trial ground of excessive punitive damages.[3] None of these reasons related to any issues or doubts regarding the Tenants' underlying liability.[4] Thus, while a new trial was certainly warranted on the issue of punitive damages, the court offered no reason for retrying the issue of liability or compensatory damages.

A similar issue arose in *Schelbauer v. Butler Manufacturing Co.* (1984) 35 Cal.3d 442, 455-456 (*Schelbauer*), where a trial court granted a new trial on all issues even though it had found error in only one aspect of the jury verdict. The plaintiff urged the Supreme Court to limit the new trial to the sole contested issue, apportionment of liability. (*Ibid.*) The court agreed, holding, "A reviewing court should not modify an order granting a new trial on all issues to one granting a limited new trial 'unless such an order should have been made as a matter of law.' [Citation.]" (*Id.* at p. 456.) It reasoned, the new trial order "clearly indicates that the trial court (1) concurred with the jury's special verdicts that [the manufacturer] was liable to some extent and that the total

---

[3] The court concluded damages were excessive for the following reasons: (1) damages do not match the reprehensibility of the Tenants' conduct; (2) disparity of harm; (3) the low amount of compensatory damages; and (4) the Tenants' negative net worth.

[4] A court may order an entire new trial when excessive or inadequate damages suggest liability was not clearly established and a limited retrial would be prejudicial to either party. (*Liodas v. Sahadi* (1977) 19 Cal.3d 278, 285-286 [partial new trial on damages prejudicial and new trial on all issues required]; *Hamasaki v. Flotho* (1952) 39 Cal.2d 602, 608-609 [entire new trial warranted because low verdict indicated jury compromised because liability a close question].)

12

damages sustained by [the plaintiff] were $865,000, and (2) disagreed only with the jury's apportionment of liability." (*Ibid.*)  The court then reviewed the trial evidence and concluded sufficient evidence existed to support the liability findings.  (*Id.* at pp. 456-457.)  The court concluded retrial on those issues was unnecessary because, "There is no reason to subject the parties and the courts to the expense and delay of retrial of those issues on which the jury and the trial court agreed and which are supported by the evidence. . . .  Accordingly, the new trial order is modified to limit the new trial to the issue of apportionment of liability."  (*Id.* at p. 457.)

Here, we do not have a transcript of the trial and therefore cannot independently review the record to determine if substantial evidence existed to support the liability finding or if there was evidence of a compromised verdict.  However, we conclude under the circumstances of this case such a review is unnecessary.  The court's order referenced the Tenants' liability.  In evaluating punitive damages, the court weighed the reprehensibility of their misconduct against other factors.  (See *Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 928 (*Neal*) [factors weighed in considering punitive damages include reprehensibility of the conduct and harm actually caused].)  It noted the basis for punitive damages could have been the oral or written misrepresentations.  Although clearly opposed to the amount of punitive damages, the court's order does not suggest the jury's verdict on liability was suspect or required a retrial.  The Tenants made no challenge to the jury's finding they were liable to Gehlhar in their motion for new trial, and they made no appearance on appeal to argue this point.  They have essentially conceded that the finding of their liability had ample support in the evidence.

13

In summary, since there appears to be no issue regarding the Tenants' liability, the only remaining contested issue is the punitive damages award. The new trial order should be limited to this issue because "[t]here is no reason to subject the parties and the courts to the expense and delay of retrial of those issues on which the jury and the trial court agreed and which are supported by the evidence." (*Schelbauer, supra*, 35 Cal.3d at p. 457.) We note a partial new trial will not be prejudicial to the Tenants because the court must allow evidence before the second jury to determine the degree of reprehensibility of their acts (without revising the issue of whether they were liable). Although much of the same evidence might be presented at the retrial, this reason alone is not a reason to permit a trial on all issues. We conclude as a matter of law the court should have limited its new trial order to the issue of punitive damages.[5]

## C. Meritless Arguments Raised by Gehlhar/Romans

### i. Adequacy of the Record

Gehlhar and Romans first argue, "[The Tenants] failed to provide the trial court with any record. Thus, the trial court necessarily abused its discretion by granting the motion [for a new trial] . . . ." They assert the "trial court may have consulted its own notes taken during the trial, or it may have relied solely on its memory . . . [but] [w]ithout any record, it cannot be ascertained whether the [c]ourt's notes or memories are accurate

---

[5] We recognize Romans received no punitive damages award, however, the court exercised its authority and discretion under section 657 to order a new trial as to all parties. We find no reason to modify this portion of the order. Gehlhar is the sole owner of Romans, and they provide no relevant authority to support the contention Romans need not participate in the new trial. For this reason, we conclude the issue is waived. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*) [when appellant raises issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived"]; see also *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [same].)

14

or were even consulted. Rather than assert what it believed might be in the record, the trial court should have just denied the unsupported motion on that basis alone. To do otherwise was an abuse of discretion . . . ." We find this claim somewhat ironic given that Gehlhar and Romans fail to provide this court with any record of the trial. In any event, their contention lacks merit.

Gehlhar and Romans' argument, focusing on the inadequacy of the record *supplied by the Tenants* in support of their motion, is essentially an attack on the briefing. Not surprisingly, this same argument was raised below in their opposition to the new trial motion. The court considered and rejected this argument and in its ruling the court expressly acknowledged the Tenants' motion contained "no declarations or excerpts of trial testimony" and, furthermore, did not "entirely comport with [the] [c]ourt's recollection or notes of the trial testimony." In spite of these "limitations," the court nonetheless found "merit to the argument that the award of punitive damages was excessive." The trial court specifically recalled Fenney's testimony as to his and Baldwin's financial condition, noting it found no reason to question the credibility of the testimonial evidence. The court commented there was no evidence to "suggest that the net worth . . . was manipulated or failed to reflect the actual wealth of these defendants, who are heavily in debt."

We conclude the Tenants' failure to provide the court with a more robust record was not fatal to their argument. The court expressly stated the grounds for its decision to grant the motion and adequately anchored its reasoning to facts in the record. Nothing more was required. (*Romero v. Riggs* (1994) 24 Cal.App.4th 117, 122 (*Romero*) [order granting new trial "will not be disturbed if it adequately refers to evidence in the record to support the action taken"].) Gehlhar and Romans provide no support for their

15

contention the court's notes or its memory was inaccurate. We find nothing in the record (or case authority) supporting their theory a trial judge should not be permitted to rely on his or her recollection of the trial evidence, or it would be an abuse of discretion for a court to rely on its notes and memory. Similarly, we found no authority or rational basis to hold a trial court has no discretion to consider a poorly drafted motion.

To the contrary, section 661 requires that a motion for new trial must be heard and determined by the judge who presided at trial. "The reason for this basic rule is obvious: 'It needs no argument, we think, to prove that a judge who has heard the evidence, examined the witnesses, and made a study of the law applicable to the facts in a case is best qualified to rule upon the weight and value of the testimony of such witnesses, as well as upon other questions presented by the motion and which were involved in the trial of the action and to which the trial judge in most instances has given his attention and studious consideration.' [Citation.]" (Wegner et al., Cal. Practice Guide: Civil Trials & Evidence (The Rutter Group 2013) ¶ 18:325, p. 18-69 (Wegner).) Section 661 supports the conclusion a trial court is expected to rely on his or her notes and recollection of the trial evidence when considering a motion for new trial.

All the case authority provided by Gehlhar and Romans on this issue is inapt. Those cases concerned whether the trial court sufficiently complied with section 657's mandate to prepare an adequate statement of reasons when granting a new trial. (See *Mercer v. Perez* (1968) 68 Cal.2d 104, 108.) These cases agree a trial court must refer to specific evidence "in the record" rather than ultimate facts or legal issues. (See e.g. *Scala v. Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 366 (*Scala*) [discussing intent underlying requirement of a specification of reasons].) None of these cases held or suggested a trial court cannot look beyond the record supplied by the moving party when

16

making its "specification of reasons" mandated by section 657. (*Scala, supra,* 3 Cal.3d at p. 366.)

ii. *Court's Authority to Grant A New Trial*

Gehlhar and Romans boldly assert the court abused its discretion because trial courts have no authority to ever grant a complete new trial when only a partial new trial was requested. They are wrong. The scope of a trial court's authority when ruling on new trial motions is well established. As stated by our Supreme Court, the trial court has broad discretion under section 657 to decide whether a new trial shall be granted on some or all the issues. (*Hamasaki v. Flotho* (1952) 39 Cal.2d 602, 608 [appellate court has "jurisdiction to do no more than the trial court itself could have done" on the new trial motion]; *Leipert v. Honold* (1952) 39 Cal.2d 462, 467 [court concerned inadequate damages award result of jury compromise or bias and liability finding unreliable]; see also Wegner, supra, ¶ 18:424, p. 18-92 [cautions counsel seeking new trial on damages that court has power to grant a new trial on all issues, particularly where judge feels damage award represents a compromise verdict].)

Noticeably absent from the briefing is any mention of the Supreme Court opinions or their progeny, relevant treatises, or the plain language of section 657 that clearly and broadly authorizes a trial court to set aside the judgment "in whole or in part" and to grant a new trial on "all or part of the issues." (See Wegner, *supra*, ¶ 18:423, p. 18-92.) For this reason, we find disingenuous Gehlhar and Romans' sole reliance on *Teitel v. First Los Angeles Bank* (1991) 231 Cal.App.3d 1593 (*Teitel*), to support their argument the court was limited to granting a partial new trial on the issue of damages. They blatantly misstate the law and the holding of that case. They focus on that court's

17

holding: "[The] exclusive remedy for a trial court to employ where some damages are properly awarded, but the amount is excessive[,] . . . is through a remittitur pursuant to . . . section 662.5." (*Teitel, supra,* 231 Cal.App.3d at pp. 1604-1605, fn. omitted.) This quotation, when read in context of the facts of that case, utterly fails to support their argument. Indeed, the case has nothing to do with limiting a trial court's authority when ruling on a new trial motion.

In *Teitel,* a bank customer successfully sued a bank and was awarded $9,193.50 in general damages and $500,000 in punitive damages. (*Teitel, supra,* 231 Cal.App.3d at p. 1600.) The trial court denied the bank's post-trial motions to alternatively reduce the amount of punitive damages by a remittitur or grant a new trial. However, it granted the bank's JNOV, and in so doing, reduced the punitive damages award from $500,000 to $50,000. (*Id.* at pp. 1600-1601.) The *Teitel* court held the trial court erred in selecting the bank's motion for JNOV as the *vehicle* by which to reduce the excessive punitive damages award, rather than an order for a new trial subject to remittitur. (*Id.* at p. 1606.) Enough said.

### iii. *Were Punitive Damages Excessive*

Gehlhar and Romans next contend the trial court abused its discretion in finding the Tenants' conduct "not sufficiently reprehensible to warrant the imposition of a substantial punitive damage[s] award." (Original capitalization omitted.) Gehlhar and Romans contend punitive damages were warranted because: (1) the Tenants could afford to pay the punitive damages award over time; (2) the award amount was reasonable; and (3) the fraudulent conduct was reprehensible. As we will explain, they have misconstrued the court's ruling and applicable case law.

18

A punitive damages award is evaluated "under three criteria: the nature of the defendant's wrongdoing; the actual harm to the plaintiff; and the defendant's wealth. [Citations.]" (*Bankhead v. ArvinMeritor, Inc.* (2012) 205 Cal.App.4th 68, 77, fn. omitted (*Bankhead*).) A trial court reviews a motion challenging the excessiveness of a punitive damages award as a thirteenth juror, and is vested with the power, denied to reviewing courts, to weigh the evidence and resolve issues of credibility. (*Id.* at pp. 76-77.) "The most important question [the trial court must decide] is whether the amount of the punitive damages award will have [a] deterrent effect—without being excessive. Even if an award is entirely reasonable in light of the other two factors . . . the award can be so disproportionate to the defendant's ability to pay that the award is excessive *for that reason alone*." (*Adams v. Murakami* (1991) 54 Cal.3d 105, 111 (*Adams*).) "The purpose [of punitive damages] is to deter, not to destroy." (*Id.* at p. 112.)

In this case, the court's ruling was primarily based on its conclusion the award amount was disproportionate to the Tenants' ability to pay as measured by their financial condition. Gehlhar and Romans argue the trial court only considered the Tenants' negative net worth but should have focused on their "income flows and other factors indicating . . . ability to pay." Not so. First, the court's written ruling shows it considered not only the Tenant's net worth, but also their combined income for the year preceding trial ($120,000), their debts (exceeding $350,000), Baldwin's approximate previous income ($2,000), alongside the fact she was unemployed at the time of trial. The record demonstrates the court considered a range of financial indicators in addition to the Tenants' negative net worth.

Second, Gehlhar and Romans provide no case authority to support their contention the court abused its discretion by focusing on the Tenants' net worth. "Net

worth generally is considered the best measure of a defendant's 'wealth' for purposes of assessing punitive damages. [Citation.] . . . While the function of punitive damages will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort, the function also will not be served by an award which is larger than necessary to properly punish and deter. [Citations.]" (*Devlin, supra,* 155 Cal.App.3d at p. 391.)

We turn next to Gehlhar and Romans' argument and citations to case authority speaking to a "broad range of permissible ratios" in support of the theory the jury's punitive damages award should not be disturbed. However, Gehlhar and Romans discount the role of the trial court in determining if a damage award is appropriate. It is well settled the trial court is in a better position than an appellate court to weigh the evidence, resolve issues of credibility, and determine whether a damage award is excessive as a matter of law or influenced by passion or prejudice. (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1689.) We cannot reweigh the evidence. And as stated at the beginning of this opinion, we find the record amply demonstrates the trial court, after reviewing the evidence, properly exercised its authority under section 657 to grand a new trial on the grounds the punitive damages award was grossly disproportionate to the Tenants' ability to pay.

In their next argument, Gehlhar and Romans assert the Tenants' fraudulent conduct was reprehensible and the evidence fully supports $200,000 in punitive damages. It is unclear if they are suggesting the trial court wrongly determined the conduct was irreprehensible, or if they are complaining that court failed to weigh the reprehensibility of the conduct more heavily. In either case, the contentions are meritless. The first of

20

these arguments misconstrues the court's findings, while the second misconstrues the applicable law.

Starting with the first contention, we have carefully reviewed the record and found nothing suggesting the court ruled the Tenants' misconduct was irreprehensible or did not warrant punitive damages. We recognize that at one point the court indicated it was "not clear" from the special verdict whether the jury based the award on the Tenants' "intentional misrepresentations" about paying rent or other misconduct, i.e., elder abuse. This comment was likely based on the way the special verdict forms were worded, but since the forms were not included in appellant's appendix for us to review, we cannot know for sure. In any event, we have no reason to construe the court's observations about the verdict as meaning it believed the Tenants' were blameless. To do so we would have to ignore the rest of the minute order that plainly shows the court determined the Tenants' conduct had some degree of reprehensibility, but that weighed against other factors, the punitive damages award was excessive.

For example, the court explained it took "into account the guidelines under the applicable case law for determining on the one hand, the degree of reprehensibility of the misconduct . . . and on the other hand, the disparity between the harm suffered by . . . Gehl[h]ar and the size of the punitive damages award." This statement shows the court appropriately questioned whether the degree of wrongdoing warranted $200,000 in punitive damages when weighed against the amount of compensatory damages ($20,000) and the Tenants' unfortunate financial condition.

Alternatively, it appears from the opening brief Gehlhar and Romans believe the trial court abused its discretion by failing to weigh the reprehensibility of the misconduct more heavily. They assert "'the degree of reprehensibility of the conduct'" is

21

the "'most important'" factor and the Tenants' motion failed prove the jury wrongly decided this issue. (Citing *Bankhead, supra,* 205 Cal.App.4th at p. 85.) After restating the evidence supporting the elder abuse verdict, they assert punitive damages were warranted "to deter such reprehensible conduct in the future." They have misconstrued the case law.

As stated earlier, there are three criteria for evaluating punitive damages, all related to the purpose of punitive damages, which is to punish the wrongdoer and protect the public from future misconduct. (*Adams, supra,* 54 Cal.3d at pp. 111-112.) Our Supreme Court has explained, "[T]he *most important question* is whether the amount of the punitive damages award will have deterrent effect—without being excessive. Even if an award is entirely reasonable in light of the other two factors . . . (nature of the misconduct and amount of compensatory damages), the award can be so disproportionate to the defendant's ability to pay that the award is excessive *for that reason alone*." (*Id.* at p. 111, first italics added, second italics original.) "The reviewing court must consider the amount of the award *in light* of the relevant facts. The nature of the inquiry is a comparative one. Deciding in the abstract whether an award is 'excessive' is like deciding whether it is 'bigger,' without asking 'bigger than what?'" (*Id.* at p. 110.)

To support their argument, Gehlhar and Romans once again misconstrue the relevant case authority. For example, they cite to our Supreme Court's statement in *Neal, supra,* 21 Cal.3d at page 928, that "the more reprehensible the act, the greater the appropriate punishment, assuming all other factors are equal. [Citations.]" However, the quote is taken out of context. The Supreme Court did not suggest misconduct is the most important factor. Rather it held, "*One factor* is the particular nature of the defendant's acts in light of the whole record; clearly, different acts may be of varying degrees of

22

reprehensibility, and the more reprehensible the act, the greater the appropriate punishment, *assuming all other factors are equal*. [Citations.] *Another relevant yardstick* is the amount of compensatory damages awarded; in general, even an act of considerable reprehensibility will not be seen to justify a proportionally high amount of punitive damages if the actual harm suffered thereby is small. [Citation.] *Also to be considered* is the wealth of the particular defendant; obviously, the function of deterrence [citation], will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort. [Citations.]" (*Id.* at p. 928, italics added.)

Certainly a high degree of reprehensibility is an important indication punitive damages are reasonable. (*Bankhead, supra,* 205 Cal.App.4th at pp. 84-85.) But we found no authority supporting the contention it is the most important factor. (See *Burnett v. National Enquirer, Inc.* (1983) 144 Cal.App.3d 991 [although defendant's misconduct was reprehensible, punitive damages reduced because award constituted too great a portion of the defendant's net worth and income].)

In conclusion, we find the trial court properly considered the reprehensibility of the conduct and the disparity between the harm suffered and the size of the punitive damages award. Weighing this information along with testimonial evidence of Fenney's and Baldwin's financial condition, the court found the award grossly excessive in light of the purpose of punitive damages awards as well as excessive as a multiplier of compensatory damages. The trial court was simply not required to weigh the reprehensibility of the conduct more heavily than Fenney's and Baldwin's financial condition when it examined the jury's punitive damages award. (*Adams, supra,* 54 Cal.3d at pp. 111-112.)

*iv. Motion for Attorney Fees*

The trial court denied Gehlhar and Romans' motion for attorney fees on grounds the grant of a new trial precludes the existence of a prevailing party. In passing, Gehlhar and Romans argue the trial court abused its discretion when it denied their motion for attorney fees. The argument is devoid of any reasoned legal analysis or citation to authorities. Accordingly, we consider the point waived. (*Badie, supra,* 67 Cal.App.4th at pp. 784-785.)

III

The postjudgment order granting a new trial is modified to limit retrial to the issue of punitive damages. The trial court shall conduct further proceedings consistent with the view expressed in this opinion. The postjudgment order denying attorney fees is affirmed. In the interests of justice and because appellants failed to follow basic rules of appellate procedure, and the briefing did not assist the court, we award no costs to appellants on this appeal.

O'LEARY, P. J.

WE CONCUR:

RYLAARSDAM, J.

ARONSON, J.

24